# Stemons *v.* Turner, Appellant.

*Negligence—Physicians—Malpractice — Measure of care — Reasonable skill and diligence—Res ipsa loquitur.*

1. A physician or surgeon is only required to exercise such reasonable skill and diligence as is ordinarily exercised in his profession.

2. In a malpractice case an instruction that a physician is required to use a "high" degree of care is erroneous.

3. In a case against a physician for injuries caused by burns in applying X-rays, it is reversible error for the court, in the absence of any evidence of negligence, to charge in effect that the jury could infer negligence from the existence of the burns alone.

4. The doctrine of res ipsa loquitur does not apply to such a case.

5. A person undertaking to use X-rays is held only to the same measure of responsibility as in administering other forms of medical treatment.

*Evidence — Expert witness — Cross-examination — Hypothetical question.*

6. On cross-examination of an expert witness, who has expressed an opinion in answer to a hypothetical question, full latitude should be allowed to ascertain just what the factors were which the witness took into account in arriving at his conclusion, and what, if any, he disregarded.

7. In such case, the witness may be asked as to the basis of his opinion, including statements on which he has relied, in order to show the reasonableness or unreasonableness of the opinion expressed, and to test its value.

8. His attention may be called to any fact omitted from the hypothetical question asked in direct examination, or the facts stated in the hypothetical question which are deemed unimportant may be sifted out.

9. The value of an expert opinion may be fortified on the one hand and reduced on the other, by an examination as to the expert's general experience, his lines of knowledge in a particular case, and the facts and reasons on which he bases his conclusion.

Argued March 22, 1922. Appeal, No. 314, Jan. T., 1922, by defendant, from judgment of C. P. No. 2, Phila. Co., June T., 1919, No. 3516, on verdict for plaintiff, in case of James S. Stemons v. Dudley B. Turner. Before

FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Trespass for personal injuries. Before BARRATT, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $5,000. Defendant appealed.

*Errors assigned* were various rulings and instructions, appearing by the opinion of the Supreme Court, quoting record.

*Hampton L. Carson,* with him *Joseph Carson* and *William G. Wright,* for appellant.—Reasonable care is all that is required of a physician: McCandless v. McWha, 22 Pa. 183; Wohlert v. Seibert, 23 Pa. Superior Ct. 213; English v. Free, 205 Pa. 624.

The District of Columbia, Arkansas, Maryland and New York do not apply the doctrine of res ipsa loquitur in such a case: Sweeney v. Irving, 228 U. S. 233; Runyan v. Goodrum, 228 S. W. 397; Street v. Hodgson, 115 Atl. 27; Antowill v. Friedmann, 188 N. Y. S. 777, while Iowa, Washington, Minnesota and Kansas do apply it; Shockley v. Tucker, 103 N. W. 360; Sauers v. Smits, 95 Pac. 1097; George v. Shannon, 142 Pac. 967; Holt v. Ten Broeck, 159 N. W. 1073.

The theory of the trial judge ran counter to the law of this State: De Long v. Delaney, 206 Pa. 226; Friend v. Kramer, 236 Pa. 618.

Dr. Feldstein's testimony should have been stricken out: Reber v. Herring, 115 Pa. 599; Ziegler v. Foundation Co., 228 Pa. 64; Albert v. Transit Co., 252 Pa. 527.

*James Gay Gordon, Jr.,* for appellee.—Ordinary care for a physician is a high degree of care, and it is advancing higher with the advance of medicine. When, however, the physician turns to the X-ray for photo-

graphic purposes, he uses a mechanical instrument requiring special knowledge and technical skill, and he must equip himself with the requisite knowledge and exercise the care which the danger of the agency demands. He cannot rest upon the general knowledge of the physician; he enters the domain of the specialist, or expert, and his care must measure up to that of the specialist: Runyan v. Goodrum, 228 S. W. 397; Evans v. Clapp, 231 S. W. 79; Alexander v. Nanticoke Light Co., 209 Pa. 571; Lynch v. Meyersdale Electric Light, Heat & Power Co., 268 Pa. 337.

OPINION BY MR. JUSTICE SCHAFFER, April 24, 1922:

Defendant is an osteopathic physician; plaintiff was his patient. In the endeavor to diagnose the latter's complaint, the former took a number of X-ray photographs of the affected region of plaintiff's body, at which point a burn thereafter developed, causing him much pain and suffering, requiring him to spend a considerable period of time in hospitals for treatment, and to undergo surgical operations; to recover damages therefor this action was brought, plaintiff alleging they were caused by the negligent application of the X-ray to his body. The trial of the issue brought a verdict for plaintiff, from the judgment on which we have this appeal by defendant.

In his statement of claim, plaintiff, after reciting that the defendant had subjected his body to the X-ray, thus stated the duty of care which the defendant was required to use in so doing: "it became and was his [defendant's] duty to do so with the skill reasonably required in the same and [in the] proper use of such practice and treatment." As will be demonstrated hereafter, the court in its charge instructed the jury that they could apply an entirely different and higher rule of duty and care to defendant than appellee thus invoked in stating his cause of action. It is noteworthy also, in connection with the allegations in plaintiff's pleading, that he avers as the only basis of recovery that "contrary to his duty in the

premises [as heretofore stated] the defendant in exposing the plaintiff's person and hip to the X-ray did so in such a negligent, careless or reprehensibly ignorant manner that the plaintiff was severely injured and burned by said X-rays." There is nothing in the statement which avers that the machine used was in any way different from those ordinarily in use, or that defendant, through lack of training or otherwise, was incompetent to handle it. The issue was therefore narrowed to the single question, whether the defendant negligently or ignorantly used the X-ray, on the occasion when he subjected plaintiff to it, measuring the skill and care required of him in its use as a "duty to do so with the skill reasonably required in the proper use of such practice and treatment." This is substantially the rule laid down by our cases, which hold that a physician or surgeon is only required to exercise such reasonable skill and diligence as is ordinarily exercised in his profession (McCandless v. McWha, 22 Pa. 261; Williams v. LeBar, 141 Pa. 149; English v. Free, 205 Pa. 624), and it is also the general rule: 21 Ruling Case Law 381. Instead of following it, however, the trial judge announced an entirely different standard by instructing the jury (seventh and eighth assignments of error) that it was the duty of defendant to use a "high" degree of care, whereas he was only required to use the ordinary care exercised under like circumstances, and a higher degree of care only when compared with that called for in less important matters.

The court in its general charge announced still another rule, inapplicable to cases of this character, by saying (fifth and sixth assignments of error): "All of the physicians and the X-ray specialists agree that by a proper and careful use of a certain accepted and well-recognized formula by the profession, which formula has been described and which you will recall, an X-ray burn could not occur. The defendant says that he used a formula of even less intensity than that. Obviously, therefore, if the defendant did use the formula which he

says he did, then his application of the X-ray did not cause an X-ray burn of the plaintiff's groin. However, if you find as a fact that the plaintiff did sustain an X-ray burn of the groin, and that this defendant was the only person who ever X-rayed the plaintiff's groin, then you would be justified in concluding that while the defendant told you that he used the X-ray according to a harmless formula, he was not telling you the truth, and that, on the other hand, the formula that he did actually use was a negligent and improper formula under the circumstances." This applied the rules res ipsa loquitur to the case, and permitted the injury to plaintiff and nothing else to speak the negligence; a rule which we have said (see above citations) does not apply as between doctor and patient. Moreover, there was no evidence to show that the defendant used a dangerous formula. While the judge charged that there could only be a recovery if the defendant was negligent, nowhere does he point out what the specific negligence was, but permitted it to be inferred from the injury alone. Although the court said "While the ordinary rule is that negligence will not be presumed from the mere happening of an accident and a consequent injury," he coupled this with the statement (fourth assignment of error), "the plaintiff must show either actual negligence or conditions which are so obviously dangerous as to admit of no inference than that of negligence." There was no condition indicating danger to the plaintiff, unless it was to be inferred from the injury alone. From the charge, the jury could derive no other conclusion than that simply because appellee was burned he could recover. That this was the opinion of the court is manifest by this further quotation from the charge, "If it was not an unavoidable accident, but, on the other hand, was such a happening as in the ordinary course of taking X-ray pictures would not have happened had the defendant exercised reasonable and careful skill of any person employing such a dangerous agency as is the X-ray machine,

then you would reach the conclusion that the defendant was negligent and should be held liable for the results of his negligence."

A careful reading of the charge shows, that the case was submitted to the jury upon substantially one ground, did defendant tell the truth when he said he used less dosage of the X-ray than that which was safe under a well-known formula, and in effect instructed them that they could draw the inference that he did not because injury resulted; this is not in harmony with the law as it has existed with us since we were first called upon to define it as applied to the relation of physician and patient. The rule announced leaves out of account the idiosyncrasy of certain persons to the X-ray. That there is such idiosyncrasy and that it cannot be known until after the X-ray has been used, was shown at the trial.

The court unduly stressed the fact (eighth assignment of error) that the X-ray is a dangerous instrumentality. So is a surgeon's knife. If human ills are to be cured, such instrumentalities must be used. To put upon the medical profession, which must use them, such a burden as financial responsibility for damages, if injury or death results, without proof of specific negligence, would drive from the profession many of the very men who should remain in it, because unwilling to assume the financial risks.

Appellant presented points (eleventh and twelfth assignments of error) which in substance, requested instructions that negligence could not be inferred from the mere fact of the injury. While these points were affirmed, instead of the affirmance being unqualified, as appellant was entitled to have it, the court added the statement, that the jury was referred to his general charge on the subject. In the general charge he had said that the inference of negligence did arise from the injury resulting to plaintiff.

The appellate courts in the several jurisdictions throughout the country, where the question has arisen,

are not in accord on the question as to whether the res ipsa loquitur doctrine should be applied in X-ray burning cases, the weightier reasoning being that it should not. In Runyan v. Goodrum, 13 American Law Reports 1403, 1413 (1921), the last decision on the subject, the Supreme Court of Arkansas says, "The doctrine of res ipsa loquitur does not apply in such cases, because the testimony shows that on account of the idiosyncrasies of the X-ray machine one person of a certain type and temperament would be susceptible to a burn, while another person of a different type under the same circumstances would not be burned. Moreover, it is shown that burns do occasionally occur in the ordinary course of the exposure, in spite of the highest diligence and skill to prevent them." The note to this case covers all the decided cases, points out the conflict of authority among them on the res ipsa loquitur doctrine, and deduces the generally recognized conclusion that a person undertaking to use X-rays is held only to the same measure of responsibility as in administering other forms of medical treatment. (See 21 Ruling Case Law 386, to the same effect.) This is the rule which wisdom dictates, but the court below did not apply it.

As the case goes back for another trial, one further matter should be disposed of, so that errors appearing in the record before us shall not be repeated. In direct examination of an X-ray expert, plaintiff's counsel put to him a hypothetical question, intended to elicit the answer that, if the facts assumed in the interrogatory were true, the defendant was negligent. On cross-examination of this witness, defendant's counsel asked whether his answer to the hypothetical question was based on the failure to use certain enumerated appliances in connection with the X-ray machine (twenty-first and twenty-second assignments of error) to which plaintiff's counsel objected, on the ground that, in direct examination, on defendant's objection, he had been denied the right to inquire as to the use of these appliances. The court sus-

tained the objection and defendant was denied the opportunity to inquire whether in reaching his opinion the witness had come to it on the assumption that defendant had failed to use the appliances. Whatever may be said as to the propriety of denying the right to plaintiff to examine in this particular in chief, there can be no question but that the attempted cross-examination was proper and should have been allowed. On cross-examination of an expert witness, who has expressed an opinion in answer to a hypothetical question, full latitude should be allowed to ascertain just what the factors were which the witness took into account in arriving at his conclusion, and what, if any, he disregarded; otherwise the integrity and value of his opinion cannot be investigated. Under such circumstances, a broad range of inquiry is permitted and the expert witness may be asked as to the basis of his opinion, including statements on which he has relied, in order to show the reasonableness or unreasonableness of the opinion expressed, and to test its value. His attention may be called to any fact, omitted from the hypothetical question asked on direct examination, or the facts stated in the hypothetical question which are deemed unimportant may be sifted out: 22 Corpus Juris 723. "The value of an expert opinion may be fortified on the one hand and reduced on the other by an examination as to his general experience, his lines of knowledge in a particular case, and the facts and reasons on which he bases his conclusion": Dawson v. Pittsburgh, 159 Pa. 317, 325. The data on which an expert rests his specific opinion (as distinguished from the facts which make him skillful to form one at all) may be fully inquired into upon cross-examination. Without them the value of the opinion cannot be estimated: Wigmore on Evidence, vol. 2, sec. 992. "On cross-examination, to test the accuracy and reliability of an expert, any hypothetical question may be asked him......whether supported by the evidence or not. Nor does the indulgence end here. The examining counsel will be allowed

to submit any question, though not hypothetical in form, which, in the opinion of the judge, would tend to test the credibility of the witness. In other words, holding in view this object of probing the subjective qualities of the witness for the objective truth of his statement, hypothetical questions broader or narrower than the evidence may be propounded. Almost any state of facts can be assumed to exist which fairly tends to probe the witness": Chamberlayne on Evidence, vol. 3, sec. 2479.

The fourth, fifth, sixth, seventh, eighth, eleventh, twelfth, twenty-first and twenty-second assignments of error are sustained and the judgment is reversed with a new venire.