# Remley *v.* Plummer et al., Appellants.

*Physicians and surgeons—Malpractice—Anesthetics—Difference of opinion—Questions of surgical practice—Function of court and jury.*

In an action against two physicians and surgeons to recover damages for malpractice, there can be no recovery on the ground that a stimulant should have been given before administering an anesthetic, or on the ground that chloroform should not have been substituted for ether, where there was testimony of physicians and surgeons of unquestioned standing and reputation that the treatment followed was, in the circumstances, correct and in accord with good surgical practice.

The duty imposed on a physician or surgeon is to employ such reasonable skill and diligence as is ordinarily exercised in his profession, and the test of such ordinary care, skill and diligence is that which physicians and surgeons in the same general neighborhood ordinarily have exercised in like cases, having regard to the advanced state of the profession at the time.

If the treatment given by physicians or surgeons is in accordance with a recognized system, it is not for the court or jury to undertake to determine whether that system is the best, nor to decide questions of surgical science on which surgeons differ among themselves.

Argued April 20, 1922. Appeal, No. 85, April T., 1922, by defendants, from judgment of C. P. Beaver County, Sept. T., 1919, No. 160, on verdict for plaintiff, in the case of Margaret Remley v. Harry Raymond Plummer and E. H. Dowds. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Trespass to recover for malpractice. Before BELL, P. J., 46th Judicial District, specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict in favor of the plaintiff in the sum of $3,000. Subsequently, at the suggestion of the court, the plaintiff filed a remittitur for the excess over $1,500, and judgment was entered thereon. Defendants appealed.

*Errors assigned* were refusal of defendants' motion for binding instructions and motion for judgment non obstante veredicto.

*Homer H. Swaney,* of *Martin & Swaney,* for appellant. —The plaintiff's testimony, in its most favorable light, shows nothing more than error in judgment, for which the defendants are not liable: Baker v. Wayne, 49 Atl. 963; Williams v. Lebar, 21 Atl. 525; Gore v. Brockman, 119 S. W. 1082; Dye v. Corbin, 53 S. E. 147; Carpenter v. Blake, 75 N. Y. 12.

*James H. Cunningham,* and with him *Frank H. Laird,* for appellee.

OPINION BY KELLER, J., July 13, 1922:

This is an action in trespass against two physicians and surgeons jointly for malpractice.

William Remley, while in the course of his employment as a steel worker, had his left hand injured. Dr. Plummer, one of the defendants, was called in to render surgical aid. He found the index finger partially amputated, the nail torn off and the bone crushed and splintered. After cleansing the wound and applying an antiseptic solution the doctor recommended that he go to the hospital where he could be given an anesthetic, to which the patient assented. Dr. Plummer asked Dr. Douds, the other defendant, to assist him by administering the anesthetic. While he was under the influence of the anesthetic and Dr. Plummer was operating, the patient suddenly died. His mother brought this action alleging negligence on the part of the surgeon resulting in her son's death. She died between the rendering of the verdict and the entry of judgment and her administratrix has been duly substituted as plaintiff in the action.

The negligence alleged in the plaintiff's statement and for which she sought to hold the defendants responsible in damages consisted of: (1) administering ether or chloroform instead of a local anesthetic; (2) administering ether or chloroform without first giving the patient something to stimulate his heart; (3) continuing the use of the anesthetic when they found that the patient "took it badly"; and (4) performing the operation before the patient was fully anesthetized.

To prove the allegations contained in her statement the plaintiff produced two practicing physicians who testified, (1) that the proper treatment would have been to use a local anesthetic instead of ether or chloroform; (2) that if a general anesthetic was administered a hypodermic of morphine and atropine should previously have been given as a heart stimulant; (3) that it was not good surgery, during the operation, to switch from

ether to chloroform momentarily when the anesthetist found that the effect of the ether was to irritate the patient's bronchial tubes and cause an accumulation of mucus; that the operation had better have been abandoned at that point. Both of these witnesses were local physicians, one of whom had had many years' experience in minor surgery, but did not himself perform major operations, the other of whom was a surgeon of twenty-nine years' practice and was at the time conducting a hospital. Their standing and ability were not questioned on the trial.

On the other hand, seven surgeons of the neighborhood supported the defendants and testified that everything that had been done by them had been in accord with the best modern surgical practice. It was testified in detail, (1) that it was a matter of judgment whether a local or general anesthetic should be used; that the advantages of the latter's use frequently more than counterbalanced its greater danger, and that in the circumstances of this case the use of the general anesthetic was proper; (2) that where the preliminary examination of the patient disclosed no trouble or affection of the heart,—as was the case here—it was good surgery to administer the anesthetic without previously giving a hypodermic heart stimulant; (3) that if the ether irritated the bronchial tubes, resulting in an undue accumulation of mucus, it was proper surgical practice momentarily to switch from ether to chloroform as an anesthetic until the mucous condition was relieved; that the operation should not be abandoned in the midst. One of these witnesses was the anesthetist of a Pittsburgh hospital who had administered anesthetics in over 7,000 cases in the last eight years. The others were on the surgical staffs of hospitals or acted as surgeons for railroads and large manufacturing establishments. Their skill and ability in their profession were not questioned by the plaintiff.

The trial judge held that the question whether a local or general anesthetic should have been administered was

a matter of judgment for which a physician should not be held liable in damages, saying in his charge: "The use of a general anesthetic in minor surgery has been so long recognized that we would not permit the weaker evidence that is here, as compared with the overwhelming evidence to the contrary, to hold men responsible because they elected to use a general anesthetic instead of a local anesthetic, even in matters of minor surgery. Therefore that phase of the case is withdrawn from your consideration." The other matters, however, he submitted to the jury.

The question actually passed upon by the jury was not whether the defendants, in their handling of the case, had been guilty of negligence in not following a well-recognized and established mode of treatment, but rather, which of two methods, both having their respective advocates and followers of respectable authority, was the safer and better from a surgical standpoint. In other words, in the face of conflicting reliable expert evidence as to what was the proper course to be pursued by the surgeon in charge of the case, twelve laymen, with no knowledge of medicine and surgery were called upon to decide a disputed scientific medical and surgical question upon which eleven physicians and surgeons of standing and experience could not agree, and as to which there is a wide divergence of competent authority, and were permitted to mulct the defendants in damages for following a course of conduct which by far the greater number of the expert witnesses testifying said was in accordance with that indicated by the best modern surgical practice.

The duty imposed on a physician or surgeon is to employ such reasonable skill and diligence as is ordinarily exercised in his profession: McCandless v. McWha, 22 Pa. 261; English v. Free, 205 Pa. 624; Stemons v. Turner, 274 Pa. 228, and the test of such ordinary care, skill and diligence is that which physicans and surgeons

in the same general neighborhood ordinarily have exercised in like cases having regard to the advanced state of the profession at the time: Wohlert v. Seibert, 23 Pa. Superior Ct. 213, 218; 21 R. C. L. 386. It follows that if there is a reasonably general agreement as to what is the proper medical treatment for a disease or the proper surgical treatment for an injury and there is a dispute as to whether the physician or surgeon in charge of the case used the method or means thus generally prescribed a question of fact is presented which is for a jury to determine. Or if the symptoms of a disease or the effects of an injury are so well known that a reasonably competent and skillful physician or surgeon ought to be able to diagnose the disease or injury, his negligence in failing to do so is likewise a matter of fact on which a jury of laymen may pass judgment. But if the symptoms are obscure or such that even a skillful practitioner might after using his best knowledge and judgment be mistaken in his diagnosis, he is not liable for such error of judgment and a jury will not be permitted to return a verdict against him by reason thereof: English v. Free, supra; Wohlert v. Seibert, supra; and where competent medical authority is divided, a physician will not be held responsible if in the exercise of his judgment he followed the course of treatment advocated by a considerable number of his professional brethren in good standing in his community: Leighton v. Sargent, 27 N. H. 460; Miller v. Toles, 183 Mich. 252, 150 N. W. 118; Staloch v. Holm, 100 Minn. 276, 111 N. W. 264; Patten v. Wiggin, 51 Maine 594. He is not liable for errors of an enlightened judgment; Williams v. LeBar, 141 Pa. 149, 159; 2 Shearman & Redfield on Negligence, section 612 (5th ed.) ; 5 Thompson on Negligence, section 6719; 21 R. C. L. 391. "In cases where authorities differ or 'doctors disagree' the competent physician is only bound to exercise his best judgment in determining which course is on the whole best": Patten v. Wiggin, supra.

Thus practitioners of a reputable school of medicine are not to be harassed by litigation and mulcted in damages because the course of treatment prescribed by that school differs from that adopted by another school: Force v. Gregory, 63 Conn. 167, 27 Atl. 1116; Grainger v. Still, 187 Mo. 197, 85 S. W. 1114; 21 R. C. L. 383; 5 Thompson on Negligence, section 6715. As was said in Patten v. Wiggin, supra, "The jury are not to judge by determining which school, in their judgment, is the best." "If the treatment is in accordance with a recognized system of surgery, it is not for the court or jury to undertake to determine whether that system is best, nor to decide questions of surgical science on which surgeons differ among themselves": 30 Cyc. 1588, section 8.

Wide publicity was given in the newspapers and magazines recently to the fact that an eminent physician and surgeon at a meeting of the American Medical Association doubted the efficacy and advisability of the use of radium in the treatment of cancer. Other physicians and surgeons of equal prominence differed from him. Surely a reputable physician should not be subjected to the risk of loss of his professional standing and the payment of damages because in the exercise of his best judgment he agreed with one or the other of the noted disputants on this important but mooted question. Had the defendants used a heart stimulant before administering the anesthetic and the patient had nevertheless died, physicians might easily have been found to testify that such practice was bad surgery, that it unnecessarily stimulated the heart at the beginning and left it jaded and tired when a stimulant was really needed, and defendants been held liable for the opposite error of judgment.

The testimony clearly showed a difference of medical opinion, expressed by physicians and surgeons of unquestioned standing and reputation, and the defendants were not negligent for having adopted the view held by the majority of their brethren who testified. If it was an error at all, it was one of judgment which was shared

by a large proportion of their professional associates and for which they were not responsible in damages. The same difference of opinion exists in the text books and authorities on the subject. See American Year Book on Anesthesia and Analgesia, 1915, p. 215; Oxford Surgery, chapter on General Anesthesia by Herb, p. 46; Warbasse on Surgical Treatment, p. 92.

Upon the fourth point, all the witnesses agreed that an operation should not be performed until the patient was in a condition of surgical anesthesia and insensible to pain. But the testimony of those present at the operation was that he was in that condition when Dr. Plummer began to operate and remained so while being operated on. The testimony to the contrary did not amount to a scintilla.

The fourth assignment of error is sustained, the judgment is reversed and is now entered for the defendants.