### McHUGH v. AUDET et al.
### Civ. A. No. 790.

District Court, M. D. Pennsylvania.
July 3, 1947.

Charles J. Margiotti (of Margiotti & Casey), of Pittsburgh, Pa., for plaintiff.

John C. Youngman (of Candor, Youngman & Gibson), of Williamsport, Pa., for defendant Dr. Lewis E. Audet.

Arthur H. Hull (of Hull, Leiby & Metzger), of Harrisburg, Pa., and Harry Alvan Baird, of Williamsport, Pa., for defendant Dr. William E. Delaney.

MURPHY, District Judge.

Plaintiff sought damages for alleged malpractice resulting in the death of Helen C. McHugh, plaintiff's deceased spouse and mother of five minor children.

Jurisdiction arose from diversity of citizenship and from a claim for damages in excess of $3,000. Plaintiff was a resident of New Jersey. Defendants, Dr. Lewis E. Audet and Dr. William E. Delaney, were Doctors of Medicine practicing their profession in the City of Williamsport, Pennsylvania.

Plaintiff's decedent being ill, Dr. Audet, the family physician, was called to her home. Being of the opinion that a surgical problem was involved, Dr. Delaney, a surgeon, was called into consultation. From the history of the case and based upon the professional judgment of the defendants, the condition was diagnosed as a left tubo ovarian abscess which should be drained. The patient was removed to the Williamsport Hospital.

After the patient was strengthened an operation—a posterior colpotomy—was performed. The operative findings indicated that the colpotomy did not reach and remove the cause of the patient's disorder. Following the operation there was profuse bleeding and severe shock necessitating several blood transfusions. Dr. Delaney thereupon called Dr. Marc W. Bodine, a surgeon, into consultation. It was then decided not to proceed immediately with any further operative action but to wait, watch developments, and build up the patient.

Some days later, pursuant to previous plans, Dr. Delaney left to attend the annual meeting of the American College of Surgeons in Chicago. During his absence Dr. Bodine performed an abdominal operation known as a laporotomy and removed the right Fallopian tube. Within two weeks thereafter the patient died. The principal cause of death and related causes of importance were an ectopic pregnancy with thrombosis and infection of the left broad ligament, a mass hemorrhage from the left broad ligament and a pelvic peritonitis.

Dr. Bodine's opinion was that death was caused primarily by a ruptured ectopic pregnancy; secondary cause, diffused peritonitis.

Dr. Sidney B. Jacobson, the plaintiff's expert, stated in his judgment death was caused by peritonitis.

The defendants stated that the evidence as to the existence of an ectopic pregnancy was not clear; that no recto vaginal fistula was found. Dr. Delaney stated that death was caused by paralytic ileus due to peritonitis.

Plaintiff's contention was that the defendants used improper diagnostic procedure, made an incorrect diagnosis, improperly performed the colpotomy, failed to complete the colpotomy, failed to properly treat the post-operative condition of bleeding and shock, alleging that the measures taken were only temporary and not corrective;

further that the defendants failed to use proper care, skill and diligence in not proceeding immediately to enter the abdomen to discover and remove the real actual underlying cause of the patient's trouble.

Plaintiff's position was that because decedent was a female of child bearing age, certain tests referred to as the "Needle", Freedman and/or Ascham Zondek tests for pregnancy should have been made. If, said plaintiff, such tests were made they would have revealed the existence of an ectopic pregnancy which could have been corrected only by proceeding through the abdomen, i. e., by a laporotomy. Plaintiff argues that if the condition was actually that of a tubo ovarian abscess there was also present a recto vaginal fistula which exuded dangerous and infectious germs through the vaginal area; that the defendants failed to take proper steps to cleanse the operative area. Furthermore, that in view of the danger of infection a colpotomy operation such as performed by the defendants was not proper surgical procedure. Finally plaintiff contended that the defendants in court misstated their findings in failing to disclose that they knew about the existence of a recto vaginal fistula.

Defendants replied that there was no fistula in so far as their findings revealed; that if there was, the procedure for cleansing the vaginal area prior to the colpotomy was proper and in accordance with good surgical standards and requirements. Furthermore, that if there was a fistula the danger outlined by plaintiff's witness of infection and probable fatal results was not in accord with medical and surgical authorities or in accordance with common every day operating room experience.

Defendants admitted not using the "Needle" test, stating that it was not required under the circumstances in view of the operation as conducted by Dr. Delaney. Further that since Mrs. McHugh stated in answer to a question from Dr. Delaney that she had not had sexual intercourse with any one since the birth of her last child there was no need for any pregnancy test.

Defendants stated that the post-operative condition of bleeding and shock was arrested and corrected shortly after the operation and that it would have been fatal to have immediately proceeded through the obdomen; that good surgical practice required a building-up period be first pursued before any additional surgery be performed.

In support of plaintiff's position there were placed in the record the depositions of Dr. Bodine, statements of Dr. William A. Cooper, and finally the testimony of Dr. Sidney B. Jacobson, the latter two of New York City.

Defendants testified as under cross-examination and in their own behalf on direct examination. Thereafter defendants called Dr. R. L. Foss, head surgeon of Geisinger Memorial Hospital, Danville; Dr. Albert F. Hardt and Dr. John B. Nutt of Williamsport; Dr. David W. Thomas of Lockhaven; and Dr. Lloyd G. Cole of Blossburg State Hospital, Blossburg, all of whom testified that in their professional judgment the procedure adopted by the defendants in diagnosis, the diagnosis actually made, the operation performed and the post-operative treatment administered, as well as the delay in performing a further operation, were all in accordance with good medical and surgical practice, taking into consideration the state of the art as of that time and the practice and procedure generally followed in the Williamsport area. They agreed with the defendants' position that under the circumstances it was not necessary to perform any of the tests outlined by plaintiff's expert; that the colpotomy was a proper operation under the circumstances; that it would have been dangerous to the life of the patient to proceed with further surgery immediately following the colpotomy, and generally that the defendants used proper care, skill and diligence in the diagnosis and treatment of decedent's condition.

The foregoing outlines the factual situation with which the trial judge and jury were confronted at the close of the testimony. The defendants contended that in view of the record the matter should have been disposed of by the trial judge by a directed verdict for the defendants; that the questions involved were those which could be passed upon only by physicians and surgeons and that there was no fact situation in dispute which should be sub-

mitted to the jury. The trial judge submitted the entire problem to the jury for their determination.

■ This being a case where damages were claimed for alleged malpractice, jurisdiction resting upon diversity of citizenship, the principles of law applicable to the question of liability are to be determined by the laws of Pennsylvania. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

■ Malpractice consists of a negligent or unskillful performance by a physician of the duties which are devolved and incumbent upon him on account of his relations with his patients or of a want of proper care and skill in the performance of a professional act. Hodgson v. Bigelow, 335 Pa. 497, at page 504, 7 A. 2d 338, citing Wharton and Stille's "Medical Jurisprudence", 5th Ed., Vol. 3, Section 499.

■ The duty imposed on a physician or surgeon is to employ such reasonable skill and diligence as is ordinarily exercised in his profession in the same general neighborhood having due regard to the advanced state of the profession at the time of the treatment. McCandless v. McWha, 22 Pa. 261; English v. Free, 205 Pa. 624, 55 A. 777; Stemons v. Turner, 274 Pa. 228, 117 A. 922, 26 A.L.R. 727; Wohlert v. Seibert, 23 Pa.Super. 213; Duckworth et al. v. Bennett, 320 Pa. 47, 181 A. 558.

■ This duty applies in diagnosing a patient's malady. The physician must use such ordinary skill and diligence and apply the means and methods generally used by physicians and surgeons of ordinary skill and learning in the practice of the profession, i. e., in the same general line of practice in like cases to determine the nature of the ailment and to act upon his honest opinion and conclusions. Ward v. Garvin, 328 Pa. 395, 195 A. 885.

■ Where a physician or surgeon exercises such ordinary care and skill keeping within recognized and approved methods he is not liable for the result of a mere mistake or error of enlightened judgment. There is no responsibility for an error of judgment unless it be so gross as to be inconsistent with the degree of skill which it is the duty of every physician

to possess. Hodgson v. Bigelow, supra; Williams v. Le Bar, 141 Pa. 149, 159, 21 A. 525; 2 Shearman and Redfield on Negligence, Section 612, 5th Ed.; 5 Thompson on Negligence, Section 6719; 21 R.C.L. 391. If he failed to bring to the diagnosis the proper degree of skill and care and makes an incorrect diagnosis, or if he failed to apply the means and methods generally used by physicians and surgeons of ordinary skill and learning in the practice of the profession to determine the nature of the ailment and to act upon his honest opinion and conclusion, he would be liable in damages. Ibid.

■ Where the symptoms are obscure there is no liability for a mistake in diagnosis. Duckworth v. Bennett, supra; Hodgson v. Bigelow, supra.

■ A departure from established standards of practice, unless justified by circumstances, may constitute a prima facie case of malpractice. Hodgson v. Bigelow, supra, 335 Pa. at page 518, 7 A.2d 338; Moscicki et ux. v. Shor, 107 Pa.Super. 192, 163 A. 341. The physician is entitled to have his treatment of his patient tested by the rules and principles of the school of medicine to which he belongs. Ibid.

■ Where only one course of treatment would be approved by physicians of ordinary skill the adoption of any other course may establish liability but this does not limit him to the most generally used of several modes and the use of another mode known and approved by the profession is an exercise of care. Practitioners of a reputable school of medicine are not to be harassed by litigation and mulcted in damages because the course of treatment prescribed by that school differs from that adopted by another school. Remley v. Plummer, 79 Pa.Super. 117; Barnard v. Schell, 85 Pa.Super. 329; Duckworth v. Bennett, supra; Moscicki v. Shor, supra.

■ The physician or surgeon must have due regard to the advanced state of the profession at the time, which implies that useful improvements in method of treatment will be a departure from what the majority have theretofore held. It is not for the court or jury to determine which system is best or to decide questions of

surgical science on which surgeons differ among themselves. Remley v. Plummer, supra.

If there is a reasonable general agreement as to what is proper medical treatment for a disease or proper surgical treatment for a disease or injury, and there is a dispute as to whether the physician or surgeon in charge of the case used the methods or means thus generally prescribed a question of fact is presented which is for the jury to determine. So too if the symptoms of the disease or effects of the injury are so well known that a responsible competent physician or surgeon ought to be able to diagnose the disease or injury, his negligence in failing to do so is likewise a matter of fact upon which a jury of laymen may pass judgment; but if the symptoms are obscure or such that even a skilled practitioner might after using his best judgment be mistaken in his diagnosis he is not liable for such error of judgment and the jury will not be permitted to return a verdict against him by reason thereof. English v. Free, supra; Wohlert v. Seibert, supra.

Where competent medical authority is divided a physician or surgeon will not be held responsible if in the exercise of his judgment he followed the course of treatment advocated by a considerable number of his professional brethren in good standing in his community. Remley v. Plummer, supra, 79 Pa.Super. at page 122, citing Leighton v. Sargent, 27 N.H. 460, 59 Am.Dec. 388; Miller v. Toles, 183 Mich. 252, 150 N.W. 118, L.R.A.1915C, 595; Staloch v. Holm, 100 Minn. 276, 111 N.W. 264, 9 L.R.A.,N.S. 712; Patten v. Wiggin, 51 Me. 594, 81 Am.Dec. 593.

In cases where authorities differ or "doctors disagree", the competent physician or surgeon is only bound to exercise his best judgment in determining which course is on the whole best. Patten v. Wiggin, supra; Remley v. Plummer, supra; Moscicki v. Shor, supra.

A physician is not an insurer of the health of his patient. The fact that an unfortunate result follows the use of a recognized method does not make out a prima facie case of malpractice against the physician or surgeon who makes the choice. Hodgson v. Bigelow, supra.

No compensation can be awarded unless the illness was the natural and probable consequence of the defendant's failure of duty alleged in the statement and established by evidence. Veit & Veit v. Hinchcliffe, 90 Pa.Super. 280.

Where the defendant's wrongful act does not cause a diseased condition but only aggravates and increases the severity of the condition existing at the time of the injury, plaintiff may recover only for such increased and augmented sufferings which were the natural result of defendant's act. 17 C.J. p. 740; 25 C.J.S., Damages, § 21.

Where all the medical experts agree that the well recognized established mode of treatment of a particular type of injury is different from that used by the defendant and there is evidence that the plaintiff suffered from that type of injury, the evidence makes out a prima facie case for the plaintiff. Hodgson v. Bigelow, supra.

Where the medical experts in a malpractice case are unanimous in their opinion as to the recognized and established proper treatment for a particular type of injury, but there is a dispute as to whether the patient had that type of injury the latter question is one of fact for the jury. Ibid.

Where the case is one of negligence in applying a particular method of treatment, the question is for the jury to determine. Dux v. Shaver, 105 Pa.Super. 344, 161 A. 481.

Where there is a dispute as to whether or not a certain type of injury existed, the question is for the jury. Hodgson v. Bigelow, supra.

It will be seen from an examination of the record in this case that there was a factual dispute as to whether or not the decedent had advised the doctor that she had not had intercourse since the birth of her last child. There was a factual dispute as to what symptoms actually existed and as to the nature of the illness. There was a dispute as to whether a fistula existed, as to whether the hemorrhage was

arrested and corrected or continued, and whether there was negligent treatment. There was a factual dispute as to the nature of the fluid exuded after the operation. There was a factual dispute as to whether the condition actually existing was that of a pelvic abscess or an ectopic pregnancy. There was a dispute as to whether what occurred was a mere error of judgment or a gross error in making the diagnosis.

There was a difference between the doctors as to the proper method to be pursued; different schools of thought as to the advisability of using the "Needle", Freedman and Ascham Zondek tests; different schools of thought as to the wisdom of pursuing a further operation after the colpotomy; different schools of thought as to the particular method to be applied in making the diagnosis.

It is obvious from the foregoing that although there were a series of questions upon which doctors disagree, there were a great many factual questions which could only be decided by the jury.

The defendants contended that the court should not have submitted those questions to the jury and that on the contrary the court should have ruled that these were questions upon which only experts could make decisions. The situation confronting the trial judge was one where there were factual questions which had to be decided by the jury and for the trial judge to have passed upon them to the exclusion of the jury would be to assume the duties of a trier of facts and to pass on the credibility of witnesses and the weight to be given their testimony, and in so doing to have disregarded the testimony on behalf of the plaintiff. The trial judge would not have been within his rights to have arrogated unto himself those duties or to have substituted his judgment for that of the jury. Wible v. Shor, 102 Pa.Super. 527, 157 A. 322.

After a study of the record, the several briefs, as well as after independent research, we are convinced that the trial judge properly submitted the questions to the jury and that the questions presented were those of fact, the determination of which by the jury precluded further consideration of this case unless there was during the course of the trial committed some error to the prejudice of the proper rights of the plaintiff to a fair trial.

During the course of the proceeding while the trial judge was charging the jury, counsel for the plaintiff made several suggestions all of which were adopted by the trial judge to the satisfaction of the plaintiff's counsel, so much so that at the conclusion of the charge counsel for the plaintiff made the following request: "May I have the record show that we have no exceptions to the judge's charge."

In the plaintiff's motion for new trial filed on June 28, 1945, the reasons given were that the verdict was against the law, the evidence, the weight of the evidence, and the charge of the court. It is obvious from the foregoing that there is absolutely no merit whatsoever to the plaintiff's first four reasons as assigned by the plaintiff.

 Reason No. 5 is based upon the refusal of the court to withdraw a juror on the grounds of misconduct occurring during the trial of the case. Plaintiff apparently bases this complaint upon the alleged occurrence of two incidents during the course of the trial. We have searched the record throughout and find but two possible situations to which reference apparently has been made by this assigned reason. The first is at page 346 of the record where the trial judge made the following observation: "While Mr. Youngman is looking at this, I just want to caution everybody in the court room to avoid doing anything that would show approval or disapproval of anything that is being done here by the Court, jury, counsel or witnesses. If anyone would be found doing anything that might have some improper influence, the Court would have to bring you up, and possibly, if the facts warranted, punish for contempt of Court."

This was apparently because of some occurrence in the court room, the nature of which is not made clear in the record. We assume that some incident occurred during the course of trial which was apparent to the trial judge, and we note from the remarks made and the caution administered that the situation, whatever it was

that existed, was disposed of properly and promptly.

 There is one other incident in the record to which this reason possibly refers. It appears that during the course of the trial, a member of the Bar approached the section assigned to lawyers and, in doing so, came in contact with one of the defendants. The counsel for the plaintiff and the brother of the deceased charged that the counsel in question had his arm upon the person of one of the defendants and made a swing of the arm or a sign indicating an alleged attempt to attract the attention of one of the panel of jurors. The matter was taken up with the trial judge in his chambers with counsel for the plaintiff and the defendants being present, as well as the particular member of the Bar against whom the charge had been lodged. The trial judge suggested the advisability of calling the juror into chambers in order that the matter might be fully explored. This suggestion, however, was objected to by counsel for the plaintiff.

There is nothing in the record whatsoever to show that any improper conduct was attempted. Counsel for the plaintiff made the assertion that that was a method sometimes employed in cases to influence jurors.

The trial judge had before him the complete picture with a thorough knowledge of the character, standing and responsibility of the lawyer in question, as well as a thorough grasp of the court room atmosphere. We have, upon independent research, ascertained that the juror in question had just served on a case and had voted to decide the issue in the case adverse to the lawyer in controversy. We see nothing whatsoever in the record to warrant giving further consideration to this charge. We feel that the matter was entirely one within the sound discretion of the trial judge, and we see no elements whatsoever of abuse of such discretion.

While the plaintiff complains that a number of incidents by way of demonstrations of approval or disapproval occurred throughout the trial, the record is barren of any such evidence except the two incidents referred to hereinabove. We see no

merit whatsoever to the fifth reason assigned and we therefore dismiss it.

The other reason assigned by the plaintiff in his motion for new trial was in regard to the conduct of the defendants' counsel in his closing plea. Counsel for the plaintiff has withdrawn this reason from our consideration.

On September 9, 1946, plaintiff without having obtained permission of the court and without stipulation by and on the part of counsel for the defendants filed an amended motion for new trial.

Reason No. 8 assigned in the amended motion is to the effect that the court failed to adequately charge the jury on the question of interest and bias of witnesses.

Reason No. 9 is to the effect that the court failed to caution the jury concerning the effect of demonstrations in the court room.

We have disposed of Reason No. 9 heretofore; as to Reason No. 8, we find no merit whatsoever. We have examined the charge of the court and find it to be a full and fair charge in view of the circumstances. Particularly do we so find in view of the statement of counsel for the plaintiff that they had no objections whatsoever to the charge of the court; in fact, had expressed their approbation of the charge.

 Plaintiff having failed to take exception to the charge of the court upon the subject matter herein complained of, and having further stated his approbation of the court's charge, his reason now assigned on that ground is without merit. See Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following Section 723c, which reads as follows: "Rule 51. Instructions to Jury: * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * *" Plaintiff having failed to comply with Rule 51 as above outlined, as well as Rule 26 of this court, this reason is dismissed as without merit. See Westmoreland Asbestos Co., Inc., et al. v. Johns-Manville Corp. et al., 2 Cir., 136 F.2d 844.

Finally, plaintiff in his amended motion for new trial complains of error in the exclusion of evidence. Defendants' position is that having failed to state such reason in the original motion, having failed to obtain permission of the court to file new and additional reasons or any agreement of defendants that additional reasons might be filed, plaintiff cannot now make such complaint.

The defendants rely upon Rule 59 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following Section 723c, which reads as follows:

"Rule 59. New Trials

\* \* \* \* \* \*

"(b) Time for Motion. A motion for a new trial shall be served not later than 10 days after the entry of the judgment, except that a motion for a new trial on the ground of newly discovered evidence may be made after the expiration of such period and before the expiration of the time for appeal, with leave of court obtained on notice of hearing and on a showing of due diligence."

As stated, plaintiff's motion for new trial was filed on June 28, 1945. On September 9, 1946, without agreement of defendants' counsel or leave of court, plaintiff filed an amendment to his original motion complaining inter alia of (7) exclusion of evidence; (8) inadequacy of the court's charge on bias and interest of witnesses; (9) failure to caution the jury as to demonstrations in the court room; (10) failure to grant a continuance.

 Can plaintiff as a matter of right and of law file new and additional reasons more than a year after filing his original motion? Defendants contend that under the rules he cannot. We agree with defendants' contention.

Rule 59 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following 723c, provides inter alia as follows:

(b) \* \* \* supra.

"(c) Time for Serving Affidavits. When a motion for new trial is based upon affidavits they shall be served with the motion. The opposing party has 10 days after such service within which to serve opposing affidavits, which period may be extended for an additional period not exceeding 20 days either by the court for good cause shown or by the parties by written stipulation. The court may permit reply affidavits.

"(d) On Initiative of Court. Not later than 10 days after entry of judgment the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party, and in the order shall specify the grounds therefore."

Rule 6 (b), Ibid., provides: "(b) Enlargement. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion (1) with or without motion or notice, order the period enlarged if application therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) upon motion permit the act to be done after the expiration of the specified period where the failure to act was the result of excusable neglect; but it may not enlarge the period for taking any action under Rule 59, except as stated in subdivision (c) thereof, or the period for taking an appeal as provided by law."

 Clearly there is nothing in Reasons 7, 8, 9 and 10 to constitute after-discovered evidence. In view of the provisions of the rules the court is powerless regardless of any inclination it might have otherwise to consider the additional reasons assigned. The time provided for under Rule 59 cannot be enlarged. 18 Hughes Federal Practice, Section 25551. Theiss v. Owens-Illinois Glass Co., D.C.W.D.Pa.1940, 1 F.R.D. 175; Abruzzino v. National Union Fire Ins. Co., D.C.W.Va.1940, 35 F.Supp. 925; Leishman v. Associated Wholesale Electric Co., Cal.1943, 318 U.S. 203, 63 S.Ct. 543, 87 L.Ed. 714, rehearing denied 318 U.S. 800, 63 S.Ct. 758, 87 L.Ed. 1163; Safeway Stores v. Coe, 1943, 78 U.S.App.D.C. 19, 136 F.2d 771, 148 A.L.R. 782, see dissenting opinion of Justice Miller, 136 F.2d at page 776, "\* \* \* the purpose of the rulemakers \* \* \* 'as \* \* \* undoubted-

404

ly \* \* \* to limit, severely, the time within which motions for new trials may be filed. The reasons for the rule are to minimize the 'monstrous penalty' which results from the granting of a new trial; to avoid so far as possible the reexamination of facts once judicially determined; to save the time, trouble, and expense involved in reassembling juries, recalling witnesses and otherwise repeating the necessarily elaborate trial process." See Freid v. McGrath, 76 U.S.App.D.C. 388, 133 F.2d 350; see Advisory Committee Recommendations, 5 F.R.D. 339, at page 347. "It was suggested to the Committee that ten days was not a sufficient period for a motion for new trial, \* \* \* especially in view of the fact that no enlargement of these periods is permitted. \* \* \* The Committee, after mature consideration, \* \* \* did not agree \* \* \*."

From the foregoing, it is apparent we are not free to consider plaintiff's reasons belatedly assigned. However, we do not see that plaintiff loses anything particularly because of the rules for the reason that as a matter of law there is no merit to plaintiff's contention.

█ It appears that plaintiff called as a witness one Dr. J. P. Harley, a practicing physician in Williamsport, and in connection with his testimony sought to introduce in evidence certain correspondence between Dr. Harley and one Dr. Theodore Klumpp, whereby the former sought unsuccessfully Dr. Klumpp's aid in persuading Dr. Cooper, who had examined plaintiff's decedent at the hospital prior to her death, toward "withdrawing his support from the opposing side." Dr. Harley wrote his letter on what purported to be the stationery of the Pennsylvania Medical Association and represented himself as "councilor and trustee" of the Williamsport District.

It was the position of the plaintiff that Dr. Harley was an officer in the local Medical Society and that since the medical witnesses for the defendants were also members of the Medical Society, and further that the local society was affiliated with the Pennsylvania Medical Association, they would be bound by the action of Dr. Harley in attempting to prevent the appearance of a witness for the plaintiff.

Dr. Harley stated that the letter was written on his own initiative, R.P. 415–417; that the officers of the local Medical Society did not ask him to conduct himself in such a manner, R.P. 416; that no one suggested such writing, R.P. 417. Dr. Harley stated at R.P. 418, "I was a councilor and trustee having certain perogatives to act on my own initiative and responsibility, and I did it as was stated \* \* \* on my own initiative and responsibility \* \* \* that was my own idea."

See also R.P. 418:

"Q. Did you have authority to write such a letter? A. Yes, sir.

"Q. From whom? A. As a councilor I have such authority, to do as I see fit in an individual case.

"Q. That is, without consulting anybody? A. So far as this letter is concerned, yes; I have that authority."

None of the other witnesses had any knowledge whatsoever of the letters in question or of the attempt on the part of Dr. Harley to act as he did under the circumstances. It is clear from a reading of the Code of Ethics of the American Medical Association and of the Pennsylvania Medical Association that the conduct of Dr. Harley is not to be commended. Certainly we cannot stigmatize the other members of the medical profession for such action as was taken by Dr. Harley. There is no evidence whatsoever in the record to constitute Dr. Harley as the agent of the defendants for whose actions they would either individually or collectively be responsible.

Plaintiff in his brief cites as authority 8 U.S.C.A. § 47, "Obstructing justice; intimidating party, witness or juror." 8 Federal Cyclopedia, Section 3466, "Misconduct of Parties, Counsel, Court or Third Parties", as well as a number of cases dealing with attempts to influence jurors or witnesses in litigation. We agree wholeheartedly with the cases cited by the plaintiff, as well as with the wisdom of the statutory provisions set forth. They are, however, under the circumstances and the facts in this case, not applicable.

Certainly there is nothing in the laws of Pennsylvania nor in the Federal laws which

would make the conduct of Dr. Harley such as to constitute him on the facts in this record the agent of either of the defendants. See 2 Wigmore on Evidence, Section 278, "Falsehood, Fraud, Fabrication and Suppression of Evidence, Bribery, Spoliation, and the like", particularly at page 123, "Fabrication or Manufacture of Evidence, by forgery, bribery, subornation, and the like", citing opinions of the Federal and other Courts and particularly the case of McHugh v. McHugh, 186 Pa. 197, 40 A. 410, 41 L.R.A. 805, 65 Am.St.Rep. 849; see also Ibid., Section 280, at page 127, "Same: Fraud in Separate Litigation; Fraud by Agents"; at page 128, "Where the fraudulent act—bribery, intimidation, spoliation, or the like—has personally been committed by an agent or other third person, and not by the party-opponent himself, it is obvious that the act must be brought home to the party's connivance or sanction, express or implied, in order to use it as indicating any consciousness on his part of a weak cause.

"In thus connecting it with the party, it is to be noted, on the one hand, that no mere technical theory of agency will suffice to charge him; for it is not a question of legal liability, but of actual moral connivance. On the other hand no mere technical deficiencies of proof should be allowed to exonerate him; due regard to the common probabilities of experience should be paid * * * The relation between the two, together with common experience, should suffice to admit the fact, leaving to the defendant the opportunity to exculpate himself, as he easily could if innocent of any share. The common probabilities of such cases cannot be ignored; and it is better to admit such facts in the fair certainty that an innocent party can protect himself, than to exclude them by requiring such a degree of connecting proof as practically gives a general immunity to fraud and chicanery. Most Courts exhibit an undue tenderness for technicality in dealing with such evidence, and shut their eyes, with solemn pretence, to that which every one must believe to be deserving of strong suspicion * * * No general rule seems to have found acceptance".

We do not feel this is a matter of technicality where it is sought to impute what would appear to be criminal conduct to others without very definite evidence of knowledge, connivance, participation or ratification. We find no such evidence in this case and for that reason we find no abuse of discretion on the part of the trial judge in refusing to receive the exhibits in evidence, after having heard the testimony of the several witnesses in regard to the exhibits in question.

In conclusion, we have examined the record completely, as well as the briefs of the several counsel. We find that this case, which continued over a number of days including several night sessions, was fairly tried.[1] At the conclusion of the charge of the court, plaintiff's counsel stated that they desired the record to note that they had no objection to the charge of the court. The case was fully and fairly tried without error.

For the foregoing reasons, the plaintiff's motion for new trial and amended motion for new trial are denied.