## Johnston v. Lemmon

*L. B. Schofield*, for plaintiff.

*P. H. Strubing*, for defendant.

BOK, P. J., May 20, 1955.—Plaintiff sued defendant, a surgeon, for the technical assault of performing a different and more extensive operation upon her than the one she had consented to. Instead of removing her appendix and a cyst, cauterizing her cervix, and suspending a prolapsed uterus, defendant removed her procreative organs.

The jury awarded her $2,000, and defendant has filed motions for a new trial and for judgment n. o. v. Although the verdict appears grossly inadequate in view of the complete loss of procreative power, plaintiff has filed no motion and appears to be content with her verdict, possibly on the ground that it vindicates her despite the negligible damages.

In support of his motion for judgment, defendant cites Dicenzo v. Berg, 340 Pa. 305 (1940), and Moscicki et ux. v. Shor, 107 Pa. Superior Ct. 192 (1932), and makes two arguments.

The first is that plaintiff failed to make clear any limitation upon her consent to the operation. She admitted that she signed the hospital's usual form of consent "for such surgical procedures as may be considered

necessary". This form has blanks for three signatures by the patient: the one just referred to, another to assume liability for the hospital's charges, and a third that is signed upon leaving. Plaintiff testified that she was given the form upon entering the hospital and signed erroneously the blank for release upon leaving. When this was called to her attention she signed the blank consenting to necessary operative procedures but said that she was so nervous when entering the hospital that she did not read the legend, thinking it was no more than a formal registration. She also signed the one obligating her to the charges. Exhibit P-2, however, is a letter from the hospital to William Charles Brown, Esq., apparently of counsel originally, saying that "the only paper" that plaintiff signed was the one obligating her to the charges. Finally, defendant testified that he never saw this paper and did not rely upon it, but did rely upon the organization of the hospital not to deliver a patient to the operating room unless such consent had been given.

In addition to this, plaintiff testified that she clearly told defendant that she wanted children and was assured by him that there was nothing wrong with her reproductive organs, that her condition involved only the fibroid tumor and appendix and a prolapsed uterus, and that the operation would not affect her ability to have children. He had his nurse mark "wants children" on his record, and in his letter to Mr. Brown (exhibit P-4) he said: "A notation was made on her chart that she wanted children and a conservative operation was to be done, if possible."

The defense was that a superficial vaginal examination would not show the full condition, and that when defendant opened plaintiff's abdomen he found the most advanced case of endometriosis he had ever seen; that he roused plaintiff from her spinal anesthetic, told

her what he had found, offered to take out her procreative organs or to sew her up, as she pleased; that she agreed to his doing whatever he thought necessary; and that he then performed a hysterectomy and salpingo-cophorectomy. The extrusion and proliferation of the endometrium had destroyed plaintiff's ovaries and fallopian tubes, and was constricting the rectum and intestines. It was defendant's view that she would have had to have further operations within a matter of months if he had not proceeded as he did, or death might have resulted; also that plaintiff's condition was such that she could not bear children either with or without the operation. Plaintiff's family physician and a gynecologist, both present at the operation, testified in confirmation of defendant's medical opinion and of plaintiff's oral consent. Plaintiff was able to show by cross-examination of defendant that she was heavily drugged for the operation and that one of the drugs was scopalomine, which is capable of inducing forgetfulness, in order to justify her denial that she consented orally during the operation.

With this record, the trial judge properly left to the jury the question of whether or not plaintiff had created a clear and effective limitation upon her consent to operative procedures.

Defendant's second argument is that the trial judge erred in placing upon him the burden of proving that the operation he performed was necessary, whereas it was plaintiff's burden to show that it was not necessary.

We do not think that a fair reading of the charge shows that the trial judge did this. It is true that in discussing the question of a nonsuit with counsel, the court said that the burden shifted to defendant to show that the operation was necessary. It would have been better to use the word "emergency", and that is what the trial judge discussed in his charge: no one

would argue that defendant could not do anything required to save life, had that been the case. The charge clearly left to the jury the single crucial question of what were the limits, if any, of plaintiff's consent. Argument was made about necessity by counsel and was referred to in the charge, but on the point that any scrap of ovarian tissue could allow conception (though not delivery, according to defendant) and that plaintiff did have a scrap of healthy tissue left.

We feel it is unnecessary to decide who, if either party, had the burden of showing necessity or non-necessity, since it appears from defendant's testimony that plaintiff's life was not in danger on the table and that he offered to sew her up and let her go elsewhere if she wished.

The motion for judgment n. o. v. is overruled.

We are of opinion that a new trial should be granted in the interests of justice. The verdict strikes us as disturbingly contrary to the weight of the evidence. We are well aware that we should not set aside a verdict merely because we might or even would have decided differently, but this one raises in our minds more than a cool flow of contrary judgment. We are truly disturbed that the consistent testimony of three reputable and skillful doctors should be discredited on the two important points of the patient's actual medical condition and her oral consent. We are also disturbed by the almost nominal damages, which could be 10 or 20 times as great if compensatory of plaintiff's actual damage. This haunts us even if plaintiff has chosen to accept the verdict as vindication: it still remains so obviously a compromise verdict that we strongly suspect that the jury evaded its central task of meeting the issue head on. We do not think that justice to both parties must be considered done merely because one can find oblique justification for a meager result.

Under these circumstances we feel justified in ordering a new trial: Streilein et al. v. Vogel et al., 363 Pa. 379 (1949); Bellettiere v. Philadelphia, 367 Pa. 638 (1951).

The motion for a new trial is granted.