## ORDER

## In re Null

*Roger J. Gaydos,* for petitioner.
*Walter F. Mauersberg,* for incompetent.

SIMMONS, *J.,* September 11, 1974—This matter comes before the court by virtue of a petition for the appointment of a guardian of the person for Helen Marie Null, an alleged incompetent, under section 5512 of the Probate, Estates and Fiduciaries Code, which section was derived from section 302 of the Incompetents' Estates Act of February 28, 1956, P.L. (1955) 1154, as amended July 14, 1961, P.L. 634, 50 P.S. §3302.

The petition was filed by John F. Null, the alleged incompetent's brother, with the consent of the alleged incompetent's father. From the petition, it appears that the purpose of the appointment of the guardian of the person of this alleged incompetent is to give consent to a surgeon and a hospital for the performance of certain surgery to prevent the alleged incompetent from having additional children. Under the circumstances, an attorney was appointed to represent the alleged incompetent and an attorney was engaged by the petitioning brother to represent himself.

Present at the hearing were the petitioner and his counsel, the alleged incompetent and her counsel, and the wife of the petitioner who is the proposed guardian and who was to give the requisite consent for surgery if the court approved the prayer of the petition. In addition, the several attorneys presented a deposition of a psychiatrist who had examined and interviewed the alleged incompetent.

At the hearing on this matter, the petitioner testified that his sister was mentally retarded and that she was aged 33 years old and that she already had one child out of wedlock. Further, he testified that it

was apparent that his sister, the alleged incompetent, was susceptible to being exploited sexually by unscrupulous and designing persons and that he was unable to monitor the alleged incompetent's activities 24 hours a day because he had to work and that he thought it was in the alleged incompetent's best interests to have the proposed surgery which would prevent her from having children in the future.

The wife of the petitioner, the proposed guardian, took the stand and likewise testified that the alleged incompetent had been sexually exploited and it was highly probable that she would continue to be sexually exploited in the future inasmuch as it was impossible to monitor her activities constantly.

The attorney for the alleged incompetent stated he had interviewed the alleged incompetent, had explained thoroughly to her all the legal ramifications of the proposed surgery and that he felt she understood what the consequences of the proposed surgery would be, that she could have no children in the future, and he was satisfied that she fully understood, to the best of her ability, the consequences of such surgery and consented to it.

The psychiatrist who interviewed and examined the alleged incompetent likewise felt that it was in the alleged incompetent's interest to have this surgery performed. He felt she understood as well as possible the implications of such surgery, and he felt it was definitely in the alleged incompetent's best interests to have the surgery performed which would prevent her from bearing children in the future.

The alleged incompetent took the stand and testified that she understood that if she were operated on that she could have no additional children, and

the court is convinced that the alleged incompetent, in fact, did understand that surgery would prevent her from having children in the future and that she did consent thereto.

The research of this court indicates there are no cases available to guide the court in a case of this nature, and this case is apparently a case of first impression in the State of Pennsylvania. In a recent Pennsylvania case, Yetter, Alleged Incompetent, 24 Fiduc. Rep. 1, the court there considered a case relating to the appointment of a guardian of the person of an alleged incompetent to consent to surgery to remove a cancer in an instance where the alleged incompetent had, while she was competent, refused to consent to such an operation. The court in the Yetter case refused permission for a guardian to consent to surgery under the circumstances. However, that case is distinguishable and different from the case at hand inasmuch as the alleged incompetent took the stand and testified that she understood that she could have no further children if the surgery were performed in her case, and she consented thereto.

The court in this case finds, based on the evidence adduced at the hearing, that the alleged incompetent, in fact, is of limited mental ability and is in need of a guardian of her person. The court finds that the alleged incompetent, in fact, has been sexually misused and the court further finds that it is most probable that the alleged incompetent will be sexually misused in the future. Further, the court finds that, under all the circumstances, it is in the best interest of the incompetent that she should be rendered unable to bear additional children.

The court has researched considerably in regard

274

to this matter and it appears that the general rule is well established that before a physician or surgeon may perform an operation on a patient, he must obtain a consent either of the patient, if he is capable to give a consent, or of someone legally authorized to give it for him, unless an immediate operation is necessary to save the patient's life or health. See Annotation, 9 A.L.R. 3d 1391. See also the following: 9 A.L.R. 3d 1391, 25 A.L.R. 3d 1439, 76 A.L.R. 562, 139 A.L.R. 1370; Dicenzo v. Berg, 340 Pa. 305, 16 A. 2d 15 (1940); Moscicki v. Shor, 107 Pa. Superior Ct. 192, 163 Atl. 341 (1932); Zaman v. Schultz, 19 D. & C. 309 (1933); Application of President & Directors of Georgetown College, Inc., 118 App. D.C. 80, 331 F. 2d 1000, 9 A.L.R. 3d 1367, reh. denied 118 App. 90 (D.C.), 331 F. 2d 1010, 9 A.L.R. 3d 1381, cert. denied 377 U. S. 978, 84 S. Ct. 1883, 12 L. Ed. 2d 746 (1964).

Under all the circumstances, the court does not believe that the constitutional rights of the alleged incompetent have been infringed and will rely on the analogous case of the Application of the President & Directors of Georgetown College, Inc., supra, after concluding that it has the power to appoint a guardian in this matter in order to give said guardian the power to consent to the proposed operation. The court is mindful of the grave responsibilities attendant to such a decision. The court is also cognizant of the fact that the proposed operation seriously affects the physical well being and the rights of this alleged incompetent to bear children which is a sacred right given to most women. However, the court is impressed with the report of the doctor, the consent of the father of this alleged incompetent, the consent of the brother of the alleged incompetent, and the consent of the alleged incompetent to this proposed operation.

The court is convinced that the alleged incompetent is in need of a guardian and that the alleged incompetent is of limited mental ability. Even though there is no emergency present in this case, and the alleged incompetent's life does not hang in the balance, it is clear from this record that the best interests of the alleged incompetent will be served if this operation is allowed to be performed.

Wherefore, it is the finding of the court that Helen Marie Null is, in fact, an incompetent person; that a guardian of her person is necessary in order to prevent her from being sexually abused; that it is in the best interests of this incompetent that an operation be performed which would prevent her from having children in the event that she has sexual intercourse. The sister-in-law of the incompetent, namely Barbara A. Null, is appointed guardian of the person of the said Helen Marie Null and is given the power for and on behalf of said incompetent to execute all necessary consents to the operation to prevent the said Helen Marie Null from having children.