# Moore v. Moore

*Ralph Samuels,* for plaintiff.
. *Adrian King,* for defendant.

ABRAMSON, *J.,* January 22, 2002—

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff-appellant, Marian Moore, brought an action for battery against her cosmetic surgeon defendant-appellee, John H. Moore Jr. M.D., for failure to obtain her informed consent to liposuction of fat from her cheek.[1] Plaintiff testified to the following: (1) she presented to defendant for "chin augmentation or any corrective procedure" for the purpose of correcting asymmetry to her face as a result of a previous cosmetic surgery (N.T. May 30, 2001, pp. 74-75) (see attached copy of photograph of plaintiff marked as exhibit "M-16") [not published here], (2) after consulting with defendant, she signed a consent form to undergo both an anterior face lift and liposuction, (3) in conversations with defendant regarding the liposuction, she limited her consent to liposuction only in the "chin-jowl" region, (4) in addition to performing liposuction in the chin-jowl region, defendant also performed liposuction above the chin-jowl region, that is in the cheek, without consent, (see attached copy of photograph of plaintiff marked as exhibit "M-17") [not published here], (5) as a result of the battery, she consulted with seven cosmetic surgeons to determine if the injury could be fixed, and underwent a fat grafting process one year after surgery.

---

1. Although plaintiff's complaint contains counts for medical negligence, failure to obtain informed consent and breach of contract, she limited her claim to battery at the time of trial.

Trial commenced on May 29, 2001. Plaintiff did not present expert testimony during her case in chief. At the close of plaintiff's case, defendant moved for a nonsuit. This court granted a nonsuit on June 1, 2001. The entering of the nonsuit was the subject of plaintiff's post-trial motion. That motion was denied. Plaintiff then took this appeal. Plaintiff claims that the court erred in (1) granting the nonsuit, and (2) granting the nonsuit in contradiction to three of the court's previous rulings: (i) granting plaintiff's motion in limine to preclude expert testimony, (ii) denying defendant's motion for summary judgment, (iii) dismissing as moot plaintiff's motion to strike defendant's motion for summary judgment as untimely, and (3) denying plaintiff's oral and untranscribed motion to continue the case to allow plaintiff to depose her expert for trial, and to permit plaintiff's expert to testify.

## II. STANDARD OF REVIEW

### *Motion for Nonsuit*

The standard for deciding whether to grant a nonsuit is well-established in this Commonwealth. Compulsory nonsuit is properly granted where plaintiff has "failed to establish a right to relief." Pa.R.C.P §230.1. A nonsuit is proper "only if the fact-finder, viewing all of the evidence in favor of the plaintiff, could not reasonably conclude that the essential elements of a cause of action have been established. . . . A compulsory nonsuit can only be granted in cases where it is clear that a cause of action has not been established and the plaintiff must be given

the benefit of all favorable evidence along with all reasonable inferences of fact arising from that evidence, resolving any conflict in favor of the plaintiff." *Shannon v. McNulty,* 718 A.2d 828, 829 (Pa. Super. 1998).

## III. PRIMA FACIE CASE FOR MEDICAL BATTERY

The court entered a nonsuit because it concluded that plaintiff presented insufficient evidence, and expert testimony was necessary for the jury to conclude that the cheek is anatomically distinct from the jowl and chin regions of the face, or that liposuction to the cheek was not substantially the procedure consented to, in light of the symmetry plaintiff desired.

The issue was whether the jury could have reasonably concluded that defendant was not permitted, within the terms of the consent given, and in light of the result desired, to perform liposuction to the cheek. To establish a prima facie case of medical battery, a plaintiff must prove "that the operation performed, or substantially that operation, was not authorized" by her. *Dicenzo v. Berg,* 340 Pa. 305, 307, 16 A.2d 15, 16 (1940) (holding that the evidence was not sufficient to justify a finding that plaintiff had not consented to an incision in the neck during upper shoulder surgery in light of the necessity of the surgery to alleviate the condition plaintiff was suffering). While generally, expert testimony is required in medical malpractice actions, expert testimony is not required where the matter alleged is so simple that the lack of skill or want of care is so obvious as to be within the range of the ordinary experience and comprehension of

even nonprofessional persons. *Grabowski v. Quigley,* 454 Pa. Super. 27, 34, 684 A.2d 610, 615 (1996) (holding that expert testimony is not necessary to prove a battery where a different surgeon performed the surgery than the surgeon plaintiff consented to). In battery cases, for example, expert testimony is not required where the touching of the area which was not consented to is obvious. *Montgomery v. Bazaz-Sehgal,* 742 A.2d 1125 (Pa. Super. 1999) (holding that expert testimony is not required to prove a battery where the patient consented to surgery for the clearing of a plaque blockage inside his penis and did not consent to the implantation of permanent inflatable prosthesis in his penis).

The above cases, where no expert was required to prove a battery, are distinguishable from this case because they involve touchings that clearly deviated from the touchings consented to, such as the permanent prosthesis versus no prosthesis and one surgeon versus another surgeon. The differences between jowl, chin-jowl, cheek, and chin are more subtle, if at all. A plain reading of the ordinary definitions of jowl, cheek, and chin make clear that there is an overlap between these three areas of the face. Webster's Encyclopedic Dictionary of the English Language defines cheek as "from Swedish: kek the jaw, and kak, the cheek; the side of the face, below the eyes on each side." Jowl is defined from the same source as "from Anglo-Saxon ceafl, the jaw; the hanging of the flesh of the jaw, as in a fat person." Chin is defined from the same source as "from the Latin gena, the cheek; Greek, genys, the jaw; Sanskrit, hania, the jaw; Gothic, kinnus, the cheek, the lower extremity of the face below the mouth." Hence, the jowl is a loose-fitting cheek.

Plaintiff's proffered definitions are substantially the same and, once considered, led the court to the same conclusion.

In light of the above-referenced definitions, and in the absence of contrary expert testimony, the jury could not reasonably have concluded that liposuction to the cheek was not substantially the same operation as liposuction to the chin and jowl region.[2] Just as in *Dicenzo* where the court found that an incision in the neck was substantially the same operation as surgery to the upper shoulder, we found that liposuction to the chin and jowl region was substantially similar to liposuction to the cheek, and no reasonable jury could have concluded otherwise. *Dicenzo,* 340 Pa. at 309-310, 16 A.2d at 17. The defendant was retained to sculpt an area of a face, not remove a mole. Liposuction is an internal surgery to the face with all the inexactitude attendant to non-cosmetic internal surgery to the body. See generally, *Gray v. Grunnagle,* 423 Pa. 144, 152-53, 233 A.2d 663, 667-68 (1966) (discussing that "where an internal operation is indicated, a surgeon may lawfully perform, and it is his duty to perform, such operation as good surgery demands . . . [and] the law does not insist that a surgeon shall perform every operation according to plans and specifications approved in advance by the patient, and carefully tucked away in his office-space for courtroom purposes."). Here, there was no evidence that there was such control over the procedure to be had that the surgeon could have been properly charged with an offensive

_____

2. Plaintiff used the word "region" which, in this context, served to lend an air of indefiniteness to her own description. (N.T. May 30, 2001, pp. 68:23, 77:7, 80:19, 86:6, 86:8, 98:6, 133:12.)

touching. For this, plaintiff would need an expert. In fact, plaintiff consented to liposuction of the chin and jowl "region" and presented to defendant for the purpose of "chin augmentation or any other corrective procedure" to correct "noticeabl[e] asymmetr[y]" of her face. (N.T. May 30, 2001, p. 75.) Shortly before surgery, defendant "pinched my left chin-jowl region and said, 'We're going to tighten up that area of concern for you.'" (N.T. May 30, 2001, p. 102.)

Plaintiff argued that the jury could have determined, in considering the terms "chin," "jowl," and "cheek" in the context used by the parties, that she "specifically told the defendant to leave alone," and defendant never discussed with plaintiff, the site from which he would remove fat. (Plaintiff's memorandum in support of her post-trial motion, pp. 14, 15.) This argument is not supported by the record. An examination of the transcript revealed that she did not designate an area of her face as off-limits in this procedure, and plaintiff points to no citation. The transcript shows that plaintiff testified that defendant mentioned "fullness" on one side of her face. In response, she told him she "w[as]n't worried about that" and "direct[ed] his attention to [her] chin/jowl." (N.T. May 30, 2001, p. 88.) Plaintiff's testimony does not rise to the level of express will to leave the site alone. Plaintiff failed to demonstrate by sufficient evidence that the procedures she expressly sought were both conditioned upon a certain anatomical site not being touched in the process. And no expert testified that the desired result could have been achieved without touching the supposed off-limit site. As for plaintiff's argument that the jury could have determined the definitions of "jowl,"

"chin," "chin-jowl," and "cheek" based on the "context" of the usage of the words in the parties' testimony, the court found no such context established, especially in light of the absence of evidence that she expressly communicated to defendant that there was such a difference. Plaintiff's further reliance on defendant's deposition testimony to show a "context" is also misplaced. Although the transcript reveals that the defendant's deposition was not read to the jury, even assuming the jury had the benefit of his testimony, it would be to no avail. Defendant testified that "the jowl is the lower cheek, chin." (Dep. p. 9:24.)

## IV. PRECLUSION OF PLAINTIFF'S EXPERT TESTIMONY

Plaintiff submitted that the court erred in denying her requests to allow plaintiff's expert to testify[3] because said rulings were contrary to the court's orders granting plaintiff's motion in limine to preclude defendant from presenting expert testimony, denying defendant's motion for summary judgment for failure of plaintiff to produce

---

3. Plaintiff made two requests to present expert testimony. One request was made in plaintiff's motion to strike defendant's motion for summary judgment (this motion was filed seven days before the case was scheduled for trial). The request was that "in the event this motion to strike is denied, plaintiff respectfully requests permission from the court to present in her case in chief the testimony of plaintiff's designated rebuttal medical expert . . . plaintiff further requests that this court continue the trial date to provide sufficient time to take, and grant permission to take, the videotape deposition of Dr. Shiffman." (Plaintiff's motion to strike defendant's summary judgment motion, p. 2, ¶12.) The other request was made orally on the first day of trial when the court gave indication that it believed expert testimony would be necessary. This request cannot be found on the record.

an expert, and dismissing as moot plaintiff's motion to strike defendant's motion for summary judgment as untimely. Plaintiff contended that these two orders "taken together provide a clear indication that plaintiff had prevailed on her legal position that she did not require expert testimony." (Plaintiff's statement of matters complained of, p. 2 n.4.)

Plaintiff would have this court believe that she failed to call her expert or otherwise had a continuing right to call her expert in reliance upon the court's two rulings. This could not be further from the truth. Plaintiff admitted that she served the defendant with a copy of an expert report on February 6, 2001 and chose to designate it for "rebuttal" purposes. (See plaintiff's memorandum in support of answer to defendant's summary judgment motion, p. 1.) As an explanation for this choice in February of 2001, she stated that "because plaintiff was seeking an order determining that no expert report was necessary, she designated the same as a 'rebuttal expert report.'" (Plaintiff's memorandum in support of her post-trial motion, p. 4 n.10.) Plaintiff was apparently seeking an advisory opinion regarding the necessity of expert testimony; this is not the function of the court. Allowing the plaintiff's expert to testify would have also required a continuance of the trial to depose the expert, which she had months to do. To have allowed the expert to testify in plaintiff's case in chief would have resulted in unfair surprise and prejudice to the defendant who had, in reliance on the plaintiff's representations, not retained one.

In any event, the court made no ruling that the plaintiff could proceed without an expert when it ruled on the

motion for summary judgment, motion in limine and motion to strike.

In conclusion, plaintiff's motion for a new trial should be dismissed.