51 A.3d 183

Alysse COOPER, A Minor by and through her Parent and Natural Guardian Denise COOPER, and Denise Cooper, Individually, Appellants

v.

LANKENAU HOSPITAL, Sharon Nemser–Rudo, M.D., Benjamin Montgomery, M.D., Eric Carlson, M.D., and Main Line Health, Inc., Appellees.

Supreme Court of Pennsylvania.

Argued Nov. 29, 2011.

Decided Aug. 20, 2012.

552

Paul David Brandes, Theresa L. Giannone, Villari, Brandes & Kline, P.C., Jeffrey Gutkowski, for A. Cooper, a minor, by and through her Parent & Natural Guardian Denise Cooper.

Frank P. Murphy, Murphy Woodward & Haskins, Norristown, for Appellant Amicus Curiae, PA Association for Justice.

Christopher Michael Horn, George H. Knoell III, Norristown, Kane, Pugh, Knoell, Troy & Kramer, L.L.P., for Eric Carlson, M.D.

Edward Michael Koch, White and Williams, L.L.P., Rosemary Reger Schnall, Philadelphia, for Lankenau Hosp.; Nemser–Rudo, M.D.; Montgomery, M.D.; Main Line Health, Inc.

Robert B. Hoffman, Eckert Seamans Cherin & Mellott, LLC, Harrisburg, for Appellant Amicus Curiae, Pennsylvania Medical Society.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice BAER.

Appellants seek a new trial in this medical battery/lack-of-consent case on the ground that the trial court erroneously instructed the jury on the technical elements of battery, particularly the intent to cause a harmful or offensive contact. They further maintain that the charge was erroneous because it instructed the jury that Appellants/Plaintiffs were required to prove that the surgeon who performed the allegedly unauthorized operation did so with the intent to harm. Viewing the jury charge in its entirety, we conclude that it clearly and accurately set forth the law. Contrary to Appellants' contentions, the jury charge did not require proof that the surgeon performed the operation with the intent to harm. Accordingly, we affirm the order of the Superior Court, which affirmed the trial court's entry of judgment on the verdict in favor of Appellees.

On March 29, 2004, Dr. Denise Cooper and her daughter Alysse (collectively, "Appellants") commenced the instant action by filing a complaint against various physicians and a hospital (collectively, "Appellees"). The complaint alleged, *inter alia,* that the physicians committed a battery when they delivered Dr. Cooper's baby via a Cesarean section after twenty-seven weeks of pregnancy, notwithstanding that she had refused consent for such procedure. A two-week jury trial was conducted, during which extensive testimony was offered by all parties.

The evidence established that on November 4, 2001, Dr. Cooper, herself a pediatric cardiology anesthesiologist, was twenty-seven weeks pregnant with her daughter, Alysse, when she fell down some stairs in her home. Dr. Cooper called her obstetrician's office, Appellee Main Line Health, Inc., and spoke to Appellee Dr. Eric Carlson, who advised her to go to Appellee Lankenau Hospital for tests. Once Dr. Cooper arrived, a nurse examined her with both an ultrasound and a fetal heart monitor. Finding the fetal heart rate to be lower than normal, the nurse called the on-duty obstetrical resident, Appellee Dr. Sharon Nemser–Rudo, to assist.

Upon her own examination with the same instruments, Dr. Nemser–Rudo concluded that the baby was suffering from a life-threatening bradycardia (slow heart rate), and, after consulting with another obstetrical resident, Appellee Dr. Benjamin Montgomery, determined that an emergency Cesarean section was necessary. Dr. Cooper, being a physician herself, believed her baby could be experiencing a relatively benign arrhythmia, which would not require surgical intervention. When Dr. Nemser–Rudo relayed the facts and asked the opinion of Dr. Carlson, Dr. Cooper's obstetrician, he advised Dr. Nemser–Rudo to proceed with the surgery.

Conflicting testimony was presented regarding what occurred when Dr. Nemser–Rudo returned to discuss the matter again with Dr. Cooper. Dr. Nemser–Rudo testified that Dr. Cooper ultimately gave her verbal consent for the Cesarean section. Dr. Cooper, however, testified that she never gave consent for the procedure, and, in fact, expressly refused to assent. It is undisputed that Dr. Nemser–Rudo performed the Cesarean section shortly thereafter, and delivered Alysse.

Prior to deliberations, with regard to their medical battery/lack-of-consent claim, Appellants requested the standard jury charge for lack of informed consent, set forth *infra* at n. 3, which focuses primarily on the nature of consent given by the patient, as opposed to whether any consent was given at all, and requires that the physician explain the risks that a reasonably prudent patient would need to know to make an informed decision. *See Gouse v. Cassel*, 532 Pa. 197, 615 A.2d

331, 334 (1992) (providing that to obtain informed consent for a surgical procedure, the physician must "advise the patient of those material facts, risks, complications and alternatives to surgery that a reasonable person in the patient's situation would consider significant in deciding whether to have the operation") (emphasis omitted).[1]

Because Appellants' medical battery/lack-of-consent claim was based on an alleged refusal to give any consent, and did not allege the physician's failure to secure informed consent, the trial court denied the charge pertaining to informed consent, and instead instructed the jury on lack of consent as follows:

A physician must obtain a patient's consent to perform surgery. Consent may be verbal or written. Consent is not required in an emergency. However, even in an emergency[,] surgery should not be performed if the patient refuses consent.

A physician's performance of surgery in a nonemergency without consent, or the performance of surgery in an emergency when the patient has refused consent is considered a battery under the law. A battery is an act done with the intent to cause a harmful or offensive contact with the body of another, and directly results in the harmful or offensive contact with the body of another.

If you find the defendant Dr. Nemser[-Rudo] operated on the plaintiff in a nonemergency without consent, or in an emergency where the plaintiff refused consent, then you must find that the defendant Dr. Nemser[-Rudo] committed a battery; otherwise no battery occurred.

A physician who commits a battery on a patient is liable for all the injuries caused by that surgery or treatment regardless of whether the surgery is performed or the treatment is administered with proper skill and care. Dam-

1. The Pennsylvania Suggested Standard Jury Instructions include a charge on battery and a separate charge on informed consent, but contain no specific charge applicable to a medical battery/lack-of-consent claim.

ages are recoverable for this unauthorized touching regardless of whether actual injury occurs.

N.T. 5/15/09, Vol. IX, at 51–52.

Appellants objected to this instruction, contending that it was an improper statement of the law because the "intent to cause harm" element of the intentional tort of battery should not have been included in a charge on lack of consent for a surgical procedure. *Id.* at 65–66. The trial court overruled this objection.

The trial court also provided the jury with a special verdict slip, which queried, "Do you find that Defendant Sharon Nemser[-Rudo], M.D., committed a battery on plaintiff [Dr.] Denise Cooper?" *Id.* at 4. Appellants reiterated their objection, alleging that the factual issue for the jury was whether Dr. Cooper consented, and not whether a battery had been committed. *Id.* at 4–6. The trial court again overruled Appellants' objection. Following deliberations, the jury answered the aforementioned inquiry in the negative, finding that no battery had been committed. The jury further found in favor of Appellees on all remaining claims.

On appeal, Appellants raised various issues. Relevant here is their challenge to the jury instruction on lack of consent.[2] The trial court explained in its Pa.R.A.P. 1925(a) opinion that there is no separate tort of lack of consent, and that an action based on the absence of a patient's consent constitutes a battery. Trial Court Opinion, dated 10/15/09, at 8–9 (citing *Montgomery v. Bazaz–Sehgal,* 568 Pa. 574, 798 A.2d 742 (2002) (holding that an operation without the patient's consent sounds in battery)). Thus, the trial court found that its instruction on the law of battery was proper, as it made clear to the jury that the presence or absence of consent controlled the outcome of the case. *Id.* at 10. The trial court further reiterated that because Appellants did not assert a claim alleging the lack of informed consent, the court did not err in

2. Related thereto, Appellants also challenged the verdict slip inquiry regarding the medical battery/lack-of-consent claim, which asked the jury to determine whether Dr. Nemser–Rudo committed a battery.

refusing their request to include the standard jury charge on that doctrine. *Id.*

The Superior Court affirmed in a memorandum opinion. It held that the trial court was correct in charging the jury on the law of battery because Appellants' theory of the case was that Dr. Cooper refused to consent to the emergency delivery of her child, and, thus, the surgery was unauthorized. As did the trial court, the Superior Court relied on this Court's decision in *Montgomery* for the proposition that a claim involving a surgical procedure performed without consent sounds in battery. Superior Court Memorandum, dated 8/10/10, at 10. The court went on to state that "while repeatedly reinforcing the law of battery as the controlling standard in [lack-of-consent] cases, our Supreme Court has not chosen to modify the constituent element of *mens rea* in a manner specific to medical consent cases." *Id.*

This Court granted allocatur to examine the propriety of the jury charge on lack of consent, particularly whether it was error for the trial court to instruct the jury on the technical elements of battery. In examining jury instructions, our standard of review is limited to determining whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. *Quinby v. Plumsteadville Family Practice, Inc.,* 589 Pa. 183, 907 A.2d 1061, 1069 (2006). Because this is a question of law, this Court's review is plenary. *Id.* at 1070. In reviewing a challenge to a jury instruction, the entire charge is considered, as opposed to merely discrete portions thereof. *Commonwealth v. Eichinger,* 591 Pa. 1, 915 A.2d 1122, 1138 (2007). Trial courts are given latitude and discretion in phrasing instructions and are free to use their own expressions so long as the law is clearly and accurately presented to the jury. *Id.*

Appellants argue that the jury instruction on lack of consent was erroneous because it required them to prove the *mens rea* of the intentional tort of battery. They rely on that portion of the jury charge which states: "[a] battery is an act done with the intent to cause a harmful or offensive contact with the

body of another, and directly results in the harmful or offensive contact with the body of another." N.T. 5/15/09, Vol. IX, at 51. According to Appellants, this statement improperly conveyed to the jury that a plaintiff in a medical lack-of-consent case must prove that the defendant surgeon acted with the intent to harm the patient. To the contrary, they contend, the "intent to cause harm" element of battery has no place in a medical lack-of-consent case because it would be virtually impossible to prove that a surgeon performing an operation did so with an intent to harm the patient. Rather, Appellants submit, the issue in a medical lack-of-consent case is simply whether the patient gave permission for the surgical procedure.

Acknowledging that this Court has long characterized an unauthorized surgery as a "technical" battery, Appellants submit that we have never required that all elements of an "actual" battery be proven. Relying on earlier decisions of this Court, Appellants suggest that a plaintiff asserting a claim of unauthorized surgery need only demonstrate that the operation was performed and that the plaintiff did not authorize it. *See Dicenzo v. Berg,* 340 Pa. 305, 16 A.2d 15, 16 (1940) (providing that in a case where the plaintiff alleges that an unauthorized surgical procedure was performed, the burden is on plaintiff to prove that the operation that was performed was not authorized by him). In Appellants' view, by proving that the "contact" or "touching" was not consented to, the patient establishes that it was "offensive," which is sufficient to make the unauthorized surgery a *de facto* battery. Thus, they conclude, there is no need to instruct the jury on the elements of an "actual" battery.

Appellants further argue that the trial court's jury charge requiring proof of the surgeon's intent to harm is inconsistent with well-settled case law establishing that a patient may pursue a claim for lack of consent even where no physical injury resulted from the unauthorized surgery. *See Montgomery,* 798 A.2d at 749 (holding that "a lack of consent claim is actionable even if the subject surgery was properly performed and the overall result is beneficial").

Additionally, Appellants point out that the standard jury charge on lack of informed consent, which also sounds in battery, does not include the elements of a traditional battery, and, therefore, does not reference any intent element.[3] They contend that the difference in the jury charge given in the instant case and the standard jury charge given in a lack of informed consent case, suggests that Appellants had the burden of proving that Appellees intended harm, while a plaintiff in a lack of informed consent case has no such burden. They submit that this disparity would lead to inconsistent and illogical results, considering that this Court has treated claims of lack of consent and lack of informed consent as being generally synonymous with each other.[4]

3. The standard civil jury instruction on informed consent states:

A physician must obtain a patient's consent to *[insert applicable action: surgery, including the administration of anesthesia; administering radiation, chemotherapy, a blood transfusion, or an experimental medication; the insertion of a surgical device or appliance; using an experimental device; using an approved medication or device in an experimental manner]*.

The patient's consent must also be "informed." A patient cannot make an informed decision unless the physician explains the risks that a reasonably prudent patient would need to know to make an informed decision and the alternative choices. This is called "informed consent." A patient must have been given a description of the proposed medical procedure or treatment and have been informed about the risks of the procedure or treatment. The patient must also be informed of the viable alternatives a reasonable person would consider important to know in order to make an informed decision about whether or not to undergo the procedure, treatment, or operation.

The patient is not required to prove that he or she would have made a different choice had the information been disclosed. The patient must only prove that the information not given to him or her would have been a "substantial factor" in his or her decision to consent to the procedure or treatment.

Pennsylvania Suggested Standard Jury Instruction (Civil) 11.08A.

Pennsylvania Suggested Standard Civil Jury Instruction 11.08(A) further sets forth two alternative instructions; the first providing that "[a] patient's consent is not required in a medical emergency;" and the second alternative instruction providing that "[a] patient's consent is not required if a patient is not in possession of his or her mental faculties and is unable to consult with his or her physician about his or her condition."

4. The Pennsylvania Association for Justice has filed an *amicus curie* brief on behalf of Appellants in which it advocates that trial courts in

Accordingly, Appellants conclude that a new trial is necessary because, relying on the allegedly erroneous instruction, the jury could have found that Dr. Cooper refused consent, yet concluded that no battery was committed because there was no evidence that the surgeons intended to harm Dr. Cooper or Alysse. The trial court's error in this regard was compounded, Appellants contend, by the erroneous verdict slip that asked whether Dr. Nemser–Rudo committed a battery against Dr. Cooper, instead of asking whether Dr. Cooper consented to the surgery.[5]

In response, Appellees agree that a plaintiff in a medical lack-of-consent case need not prove that the defendant surgeon performed the operation with the intent to harm the patient. Significantly, however, they dispute that the trial court so charged the jury in this case, and contend that Appellants' entire argument is premised upon a mischaracterization of the record. In Appellees' view, Appellants ignore the well-settled principle that a jury charge must be viewed as a whole and that individual sentences within the charge should not be read out of context. *See Quinby*, 907 A.2d at 1070. Accordingly, they assert that Appellants focus on the sentence of the charge stating that a "battery is an act done with the intent to cause a harmful or offensive contact with the body of another, and directly results in the harmful or offensive contact with the body of another," N.T. 5/15/09, Vol. IX, at 51,[6]

lack-of-consent cases craft a charge more specific to the issue of consent, rather than instruct on the abstract requirements of an actual battery.

5. Appellants also suggest that the trial court invoked improperly the concept of emergency into its lack-of-consent charge when Appellees referenced the same only as a defense to the negligence claim. Brief of Appellants at 28. Arguably, this claim is not encompassed within the issue for which we granted allocatur, which challenged the trial court's charge based on its inclusion of the purported "intent to cause harm" language. Nevertheless, we recognize that the concept of emergency is relevant to the consent issue. *See* 40 P.S. § 1303.504(a)(1) (providing that "[e]xcept in emergencies, a physician owes a duty to a patient to obtain the informed consent of the patient or the patient's authorized representative prior to . . . [p]erforming surgery").

6. This statement is consistent with the definition of battery set forth in the Restatement (Second) of Torts, § 18, as well as the battery defini-

and overlook the following sentence of the jury instruction, which states:

> If you find the defendant Dr. Nemser[-Rudo] operated on the plaintiff in a nonemergency without consent, or in an emergency where the plaintiff refused consent, then you must find that the defendant Dr. Nemser[-Rudo] committed a battery; otherwise no battery occurred.

*Id.*

Thus, Appellees maintain, when read in its entirety, the jury charge accurately reflects the law of this Commonwealth. They explain that "consent and battery are two sides of the same coin. An operation is either a consensual surgery (with consent being founded upon proper information) or it is a battery." Brief of Appellee Sharon Nemser–Rudo, M.D., at 14. In support of this contention, Appellees rely on cases, discussed *supra,* which recognize that an operation performed without a patient's consent constitutes a battery.

Appellees further agree with Appellants' statement of the law that in a medical lack-of-consent case, "by proving the 'touching' was not permitted, a patient establishes that it was 'offensive' sufficient to render the unauthorized surgery a *de facto* battery." Brief of Appellants at 24. They emphasize that the jury charge never required Appellants to prove an "intent to harm," but rather referred to a battery as an "act done with the intent to cause a harmful or offensive contact." N.T. 5/15/09, Vol. IX at 51. Significantly, Appellees contend, the jury instruction, when read as a whole, clearly conveyed that the "offensive contact" prong of the battery analysis is proven solely by establishing that the patient did not consent to the surgical procedure.

Appellees conclude that Appellants' "gripe" is not with the law or the jury instructions, but rather with the fact that the jury chose to disbelieve Dr. Cooper's testimony that she

tion included in Pennsylvania Suggested Standard Jury Instruction (Civil) 17.20 (providing that "[a] battery is an act done with the intent to cause a harmful or offensive contact with the body of another ... and that directly [or indirectly] results in the harmful or offensive contact with the body of another").

refused consent. Brief of Appellee Sharon Nemser–Rudo, M.D., at 17. Having been instructed that it had the obligation to determine the credibility of the parties, N.T. 5/15/09, Vol. IX., at 26, and faced with a direct conflict of testimony, Appellees assert that the jury simply resolved the dispute of fact in their favor. *See* N.T. 5/11/09, Vol. V, at 34 (setting forth Dr. Nemser–Rudo's testimony that Dr. Cooper "was informed of the procedure that was recommended and that we were planning on initiating, what that procedure involved, the indications for the procedure; and she demonstrated understanding of this[,] verbalizing her understanding and agreement"); *id.* at 133 (setting forth the testimony of the attending anesthesiologist, Dr. William Shepard, who stated that there was "a period of deliberation on Dr. Cooper's part whether or not to have the procedure, but then she decided to have the procedure.").

Finally, Appellees contend that Appellants' challenge to the propriety of the verdict slip inquiry, asking whether Dr. Nemser–Rudo committed a battery on Dr. Cooper, is not encompassed within this Court's limited grant of allocatur. In any event, they contend that for the reasons set forth above, the verdict slip inquiry was consistent with the governing law.[7]

In resolving this appeal, we shall first discuss the relevant law on lack of consent, and then examine the charge given to the jury to determine whether it was consistent therewith. Over seventy years ago, this Court held that, absent an emergency, a physician must obtain consent to perform surgery. *See Dicenzo,* 16 A.2d at 16 (holding that "[w]here a patient is in possession of his faculties and in such physical health as to be able to consult about his condition, and where no emergency exists making it impracticable to confer with him, his consent is a prerequisite to a surgical operation by his physician") (quoting *Moscicki v. Shor,* 107 Pa.Super. 192, 163 A. 341, 342 (1932)).

7. The Pennsylvania Medical Society has filed an amicus *curie brief* in support of Appellees, which substantially reiterates Appellees' arguments described herein.

■ Similarly well-established is the proposition that claims alleging a lack of consent for a surgical procedure constitute a battery committed upon a patient by a physician. *Montgomery*, 798 A.2d at 749 (providing that "a claim involving a surgical procedure performed without any consent at all by the patient ... sounds in battery");[8] *Morgan v. MacPhail*, 550 Pa. 202, 704 A.2d 617, 620 (1997) (acknowledging that the performance of a surgical procedure upon a patient without his consent constitutes a battery); *Gray v. Grunnagle*, 423 Pa. 144, 223 A.2d 663, 669 (1966) (holding that a patient who endures an operation without his consent may base his action on a tortious battery).

■ The tort of battery has been described as an unconsented touching that is either harmful or offensive. *C.C.H. v. Philadelphia Phillies, Inc.*, 596 Pa. 23, 940 A.2d 336, 340 n. 4 (2008) (defining a battery as "a harmful or offensive contact with the person of another"). It is an intentional tort. *Valles v. Albert Einstein Med. Ctr.*, 569 Pa. 542, 805 A.2d 1232, 1237 (2002). Critical to the issue presented is the requisite intent the surgeon must possess to commit a medical battery. Notably, both parties and *amici* agree that a plaintiff in a medical battery/lack-of-consent case need not prove that the defendant surgeon performed the unauthorized operation with the intent to harm the patient. They further agree that by proving that the surgery or "touching" was intentional and not consented to, a patient establishes that it was "offensive," sufficient to render the unauthorized surgery a battery.

8. In *Montgomery*, this Court held that claims alleging no consent for surgery, as well as claims alleging a lack of informed consent for surgery, both sound in the theory of tortious battery. 798 A.2d at 748–49. We stated, "[l]ack of consent for surgery involves the same general concept without regard to whether consent was uninformed or completely lacking. The result is the same—the patient is subjected to a surgical procedure to which he did not consent." *Id.* at 749. Both types of claims require a harmful or offensive touching. However, as explained *infra*, a lack of consent claim is proven by establishing that no consent was given for the surgical procedure performed; a lack of informed consent claim is proven by demonstrating that the physician failed to advise the patient of the material risks, complications and alternatives to surgery to permit the patient to make an informed decision regarding whether to undergo surgery.

■ This is a correct statement of the law. In addressing the parameters of a medical battery, we have clarified that physical injury is not required, but only "some contact." *Montgomery*, 798 A.2d at 749. The nature of the surgeon's contact, *i.e.*, whether it is offensive or harmful so as to constitute a battery, depends on whether the patient gave consent, as consent to being touched is a defense to battery. *Id.* Accordingly, surgery performed without the patient's consent constitutes an intentional and offensive touching, and satisfies the elements of battery. No intent to harm the patient need be established. *See e.g.* Patrick Kelley, *Infancy, Insanity, and Infirmity in the Law of Torts*, 48 Am.J. Juris. 179, 189 (2003) (stating "[i]n developing the tort law of intentional battery, the courts fairly quickly determined that the intent required for battery was not the evil intent associated with criminal *mens rea*, but was merely the intent to bring about a harmful or offensive contact to the plaintiff").

■ Proceeding to examine whether the trial court's jury instruction clearly and adequately conveyed the law on lack of consent, we conclude, without hesitation, that it did. A plain reading of the charge refutes Appellants' argument that the instruction required proof that Dr. Nemser–Rudo performed the surgery with the intent to harm Dr. Cooper or her baby. Such claim is belied by the record. As Appellees cogently note, the charge never employed the term "intent to harm," but rather set forth a correct definition of a battery as an "act done with the intent to cause a harmful or offensive contact with the body of another, and directly results in the harmful or offensive contact with the body of another," followed by an unmistakable direction that if Dr. Nemser–Rudo operated without consent, the jury must find that a battery was committed. *See* p. 568, 51 A.3d p. 194, *supra* (setting forth the jury charge on lack of consent).[9] The charge further acknowledged

---

9. We respectfully disagree with the dissenting opinion's assertion that "the jury was given no guidance on what is harmful or offensive conduct." Dissenting Opinion at 568, 51 A.3d at 194. As noted, the very sentence following the requirement of a harmful or offensive contact instructed the jury that if Dr. Nemser–Rudo operated without consent, the jury must find that a battery was committed.

properly that a physician need not be negligent to be liable for battery, and that physical injury is not required to prove an unauthorized touching. *Id.*[10]

Accordingly, for the reasons set forth herein, we hold that the challenged jury instruction on lack of consent, when read in its entirety, clearly and adequately set forth the law and, thus, affirm the order of the Superior Court, which affirmed the trial court's entry of judgment on the verdict in favor of Appellees.[11, 12]

Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN and McCAFFERY join the opinion.

Justice TODD files a dissenting opinion.

10. While we find no merit to Appellants' challenge to the instant jury charge, we appreciate their concern that the inclusion of the "harmful or offensive contact" element of battery, without more, could potentially lead a jury to believe that some "intent to harm" need be demonstrated in order to succeed on a medical battery/lack-of-consent claim. As noted, however, the jury could not have been misled here as the trial court unambiguously followed the definition of battery with an express direction that a battery is committed if the patient did not consent to the operation. We further appreciate Appellants' observation that the standard jury charge for a claim of lack of informed consent set forth in n. 3, *supra,* which also sounds in battery, does not refer to battery or the element of a harmful or offensive contact. Thus, to avoid confusion in future cases, in which the remaining portions of the charge are not as clear as those given here, it may be beneficial to the bench and bar for the Pennsylvania Committee for Proposed Standard Jury Instructions to consider developing a particularized standard jury charge for medical battery/lack-of-consent cases that is consistent with this opinion.

11. Contrary to the dissenting opinion, we do not hold that the "harmful or offensive contact" language contained in the traditional elements of battery is particularly "meaningful or helpful" to an understanding of what is required to prove a claim of medical battery/lack of consent. *See* Dissenting Opinion at 566, 51 A.3d at 193. Rather, we merely hold that, under the facts presented here, the trial court's use of such language, accompanied by a clear directive that a battery occurred if consent was lacking, was not an erroneous statement of the law warranting the grant of a new trial.

12. While not encompassed in the grant of allocatur, it follows from our holding that any challenge to the verdict slip's inclusion of battery language likewise fails.

Justice TODD, dissenting.

I respectfully dissent. In a lack of consent medical battery case, I would dispense with the notion, perpetuated by the majority, that consideration of the traditional battery element of "harmful or offensive contact" is meaningful or helpful. Rather, I conclude it is, as a practical matter, pointless and, as illustrated by the instructions in this case, potentially confusing to the point of error to require juries to assess whether contact is "harmful or offensive" in such cases. Further, given the ambiguous instructions in this case, I would grant a new trial.

As the majority cogently explains, a claim of lack of consent, doctrinally, sounds in battery, and a battery requires proof, *inter alia*, that the actor intended to cause a harmful or offensive touching. Majority Opinion at 560–64, 51 A.3d at 190–92; *see also Dalrymple v. Brown*, 549 Pa. 217, 229, 701 A.2d 164, 170 (1997). As the majority further notes, we conceive of a claim of lack of consent to be a battery because "surgery performed without the patient's consent constitutes an intentional and offensive touching." Majority Opinion at 564, 51 A.3d at 191; *see also id.* (agreeing that "by proving that the surgery or 'touching' was intentional and not consented to, a patient establishes that it was 'offensive' ").

However, beyond enforcing the doctrinal tidiness of battery theory, instructing juries to consider the "harmful or offensive" nature of the contact is not meaningful, and, at the same time, causes mischief and confusion. Outside of an emergency context, unconsented-to surgery is *ipso facto* a battery. *See Montgomery v. Bazaz–Sehgal*, 568 Pa. 574, 584–85, 798 A.2d 742, 748 (2002) ("surgical or operative procedures, if not consented to, amount to a battery"); *Moure v. Raeuchle*, 529 Pa. 394, 404, 604 A.2d 1003, 1008 (1992) ("an operation without the patient's consent is a technical assault"). Yes, unconsented-to surgery is also a "harmful or offensive" touching, and, yes, a harmful or offensive touching is a battery. But that intermediate logic is superfluous in lack of consent cases: again, outside of an emergency context, *all* unconsented-to surgeries are batteries, and, as a matter of proof for the

parties, and as a matter of fact finding for the judge or jury, a lack of consent case rises and falls solely on consent. *See Grabowski v. Quigley,* 454 Pa.Super. 27, 684 A.2d 610, 615–16 (1996) ("The dispositive issue in this [lack of consent] claim is the nature and scope of Appellant's consent."). For this reason, any consideration of "harmful or offensive" touching falls out of the equation; indeed, in this Court's decision reaffirming the battery foundation for lack of consent claims, we analyzed the issue without any mention of the harmful or offensive conduct element. *See Montgomery, supra; see also Moure, supra.*

The jury instructions in this case are a perfect illustration of the confusion that can be engendered by mindlessly adhering to the harmful or offensive touching paradigm in these medical battery cases. Here, the jury was instructed as follows:

A physician must obtain a patient's consent to perform surgery. Consent may be verbal or written. Consent is not required in an emergency. However, even in an emergency surgery should not be performed if the patient refuses consent.

A physician's performance of surgery in a nonemergency without consent, or the performance of surgery in an emergency when the patient has refused consent is considered a battery under the law. A battery is an act done with the intent to cause a harmful or offensive contact with the body of another, and directly results in the harmful or offensive contact with the body of another.

If you find the defendant Dr. Nemser operated on the plaintiff in a nonemergency without consent, or in an emergency where the plaintiff refused consent, then you must find that the defendant Dr. Nemser committed a battery; otherwise no battery occurred.

A physician who commits a battery on a patient is liable for all the injuries caused by that surgery or treatment regardless of whether the surgery is performed or the treatment is administered with proper skill and care. Dam-

ages are recoverable for this unauthorized touching regardless of whether actual injury occurs.

N.T., 5/15/09, at 51–52 (R.R. 3397a–3398a).

The second paragraph above instructed the jury that a battery requires an "intent to cause a harmful or offensive contact." (Significantly, as I discuss below, harmful or offensive contact was not defined.) The third paragraph instructed that, if surgery is done without consent, it is a battery. However, if the instruction in the third paragraph is correct, and the majority and I agree it is, what was the point of the instruction in the second paragraph? That is, if a jury finds there was no consent, as a matter of law the contact *was* harmful and offensive. So, why additionally instruct the jury on harm and offense? Is it merely so they understand the legal theory behind our medical battery jurisprudence? Obviously not. An instruction on harmful or offensive contact adds nothing to a jury's deliberations, is at best redundant, and at worst confusing. I would reinforce the principle that unconsented-to touching is the *sine qua non* of this type of medical battery and would disallow, in such cases, any instruction regarding harmful and offensive contact.[1]

Moreover, I find the majority's conclusion that the jury in this case could not have been confused to be practically and logically erroneous. Again, the jury was instructed that a battery requires an "intent to cause a harmful or offensive contact" and, further, that, if surgery is done without consent, it is a battery. Critically, the jury was given no guidance on what is harmful or offensive contact. Thus, as Appellants contend, the jury in this case quite reasonably could have found *both* that: (1) the doctor did not intend to cause a harmful or offensive contact (perhaps because, unguided by

1. Indeed, I would favor, as the majority notes, Majority Opinion at 557–59 & n. 3, 51 A.3d at 188–89 & n. 3, an approach to our jury instructions in lack of consent cases similar to that developed for claims of lack of informed consent, which diminishes the formal battery foundation for such claims and eliminates discussions of harmful or offensive contact. *See* Pennsylvania Suggested Standard Jury Instruction (Civil) 14.90, "Informed Consent—Nondisclosure" (formerly 11.08A); *id.* 14.110, "Damages" (formerly 11.08C).

instructions, they concluded the surgery was beneficial) and (2) the patient refused consent. The instructions do not preclude these dual findings.

Further, based on finding # 1 and the instruction in the second paragraph, the jury would have concluded the doctor's conduct *was not* a battery, while, based on finding # 2 and the instruction in the third paragraph, the jury would have concluded the doctor's conduct *was* a battery. Absent from the jury instructions was any guidance about how to avoid or resolve such conflicting conclusions. Rather, the majority holds, it seems, that the last—correct—instruction controls, *see* Majority Opinion at 565 n. 10, 51 A.3d at 192 n. 10 ("[T]he trial court unambiguously followed the definition of battery with an express direction that a battery is committed if the patient did not consent"), while ignoring the potential and likely confusion engendered by the prior instruction.

The *majority* understands the instructions to be accurate because we understand, as a matter of legal theory, that "surgery performed without the patient's consent constitutes an intentional and offensive touching." Majority Opinion at 564, 51 A.3d at 191. However, the *jury* in this case was never provided with that critical logic. Without that essential piece—indeed, without any guidance on what "harmful or offensive contact" is—the jury was permitted to decide for itself whether the contact was harmful or offensive, and to arbitrarily resolve any potentially conflicting conclusions. For this reason, contrary to the majority, I cannot conclude the jury was "clearly, adequately, and accurately" instructed on the law. *See Commonwealth v. Washington,* 592 Pa. 698, 728, 927 A.2d 586, 603 (2007). Further, as I cannot say the ambiguous instructions could not have contributed to the verdict, I would grant a new trial. *See Levine v. Rosen,* 532 Pa. 512, 517, 616 A.2d 623, 626 (1992).