**ALD-262**                                                      **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1593
_____

JAMAR WILSON,
                                        Appellant

v.

BYANAHAK JIN; MIA HI PARK; SERGEANT MILLER; SERGEANT MEDVEC;
NEDRA GREGO; NURSE EARL BLAKER; CAPTAIN MITCHELL; IRMA
VIHLIDAL; MEDICAL VENDOR WEXFORD

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-15-cv-01295)
District Judge: Honorable David S. Cercone

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
May 25, 2017

Before:  MCKEE, JORDAN and RESTREPO, Circuit Judges

(Opinion filed: June 8, 2017)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Jamar Wilson appeals from the judgment of the United States District Court for the Western District of Pennsylvania. We will summarily affirm.

I.

Because we write primarily for the parties, who are familiar with the background of this case, we describe its history only briefly. In November 2015, Wilson, a prisoner confined at SCI-Greene, filed a complaint pursuant to 42 U.S.C. § 1983. He alleged Eighth and Fourteenth Amendment violations, as well as state law claims for assault and battery and intentional infliction of emotional distress, arising from the lack of medical care and/or inadequate medical care he received for a fractured arm he sustained during an inmate on inmate assault on September 20, 2014.[1] Wilson named two groups of defendants: prison employees Sergeant Miller, Sergeant Mevec, RN Supervisor Nedra Gegro, Corrections Health Care Administrator (CHCA) Irma Vihlidal, and Captain Mitchell (collectively the "Commonwealth defendants"); and prison doctors Byanahak Jin and Mia Hi Park (collectively the "medical defendants").

In March 2016, the medical and Commonwealth defendants filed motions for summary judgment. In November 2016, the Magistrate Judge recommended granting both motions. Over Wilson's objections, the District Court, by order entered on February 24, 2017, adopted the recommendations of the Magistrate Judge. Wilson appeals.

---

[1] The facts surrounding the manner by which Wilson's arm was fractured on September 20, 2014, are disputed and are the subject of a companion case (C.A. No. 14-cv-01654). The instant case deals primarily with the medical treatment of Wilson's fractured arm subsequent to the injury.

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Because Wilson has been granted in forma pauperis status pursuant to 28 U.S.C. § 1915, we review this appeal for possible dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B). We may summarily affirm under Third Circuit LAR 27.4 and I.O.P. 10.6 if the appeal lacks substantial merit. We exercise plenary review over a district court order for summary judgment. Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the nonmoving party then must present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(1), (e)(2); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

III.

Wilson alleges the following claims against the Commonwealth defendants: (1) denial of access to medical care; (2) failure to intervene when the doctors allegedly failed to provide medical care; and (3) intentional infliction of emotional distress.

We agree with the District Court that the Commonwealth defendants are entitled to summary judgment on Wilson's denial of medical care claim. To succeed on an

3

Eighth Amendment claim for the denial or delay of medical care, Wilson is required to demonstrate that the defendants were deliberately indifferent to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 103-05 (1976). Deliberate indifference can be shown by a prison official's "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-05. We have also found deliberate indifference where prison officials delay necessary medical treatment based on a non-medical reason. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

The record shows that there is no genuine dispute that Wilson received frequent medical care for the fractured arm he sustained on September 20, 2014. Within a few minutes of seeing him on September 20, Mitchell called a nurse to examine Wilson and the nurse ordered him an ice pack. Wilson did not complain of arm pain to the nurse at this time. While Wilson claims that Mitchell saw his protruding bone and should have known that an ice pack was not sufficient treatment, he admitted in his deposition that the "bump" on his arm was only one centimeter in diameter. Although it is undisputed that Wilson's arm was broken, the record suggests that it was likely not readily apparent to a lay person. See Monmouth Cty. Correc. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d. Cir. 1987). Later that same evening, Wilson was examined by another nurse, who noted that Wilson showed no signs or symptoms of acute distress, and was able to move the fingers of his right hand. The nurse advised Wilson to ice and elevate his arm, and to put in a sick call slip.

4

With regard to Miller and Medvec, Wilson concedes that they both advised him to submit a sick call slip, which he did, but complains that neither of them would get him immediate medical care. In his deposition testimony, Wilson acknowledges that Miller told him he contacted medical on multiple occasions the next few days on Wilson's behalf and was informed that Wilson needed to put a sick call slip in to be seen on September 22, 2014. We agree with the District Court that Mitchell, Miller, and Medvec, as non-medical professionals, were entitled to rely on and defer to the medical judgment of the nurse and the medical department, who advised Miller that Wilson needed to put in a sick call slip to be seen.[2] See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

Wilson also claims that Vihlidal and Nurse Grego denied him medical care by providing misleading responses to his grievances, indicating that Wilson had a "non-displaced fracture" when the x-ray report said that it was a "displaced fracture," and stating that he did not need to see an outside specialist. The District Court correctly concluded that these responses were not entirely incorrect as the initial x-ray taken on September 24, 2014 revealed a "mild displacement," and the second x-ray, taken after Wilson's arm was casted, revealed "no displacement." Regardless, in denying his grievances Vihlidal and Grego were not denying Wilson access to medical care, but

---

[2] Wilson's failure to intervene claim is equally unpersuasive as Wilson's medical records and his own deposition testimony show that he received extensive medical care from the prison medical staff, and there is nothing in the record to demonstrate that Miller, Medvec, Mitchell, or Vihlidal (non-medical Commonwealth defendants), or Nurse Grego, who did not treat Wilson, had any reason to believe the medical staff provided constitutionally inadequate care such that they had to intervene.

merely reviewing the care he had already received. With regard to Vihlidal's alleged denial of medical treatment by tricking Wilson into signing a denial of medical care form, it is clear from the record that it was actually an authorization for Wilson's aunt to receive information about his medical care. Accordingly, the District Court properly granted summary judgment on this claim.[3]

IV.

Wilson raises the following claims against the medical defendants: (1) deliberate indifference to medical needs; (2) violation of his right to equal protection by denying him access to an orthopedic specialist because of his Restricted Housing Unit (RHU) status; (3) assault and battery for "snapping" his bone back into place without being qualified to do so and without his consent; and (4) intentional infliction of emotional distress.

We agree with the District Court that the medical defendants are entitled to summary judgment on Wilson's deliberate indifference to medical needs claim. Wilson alleges that Dr. Park was deliberately indifferent to his serious medical needs by failing to provide him with emergency medical care for his broken arm when Dr. Park saw him on September 22, 2014, and continuously denying his requests for "specialized

---

[3] We agree with the District Court that Wilson's state law intentional infliction of emotional stress claim is barred by Pennsylvania's sovereign immunity statute. With exceptions not relevant here, employees of Commonwealth agencies acting within the scope of their duties enjoy immunity for their negligent acts. See 42 Pa. Cons. Stat. § 8522. They are also immune from "intentional tort claims." La Frankie v. Miklich, 618

expertise." Wilson claims that Dr. Jin was deliberately indifferent to his serious medical needs by failing to provide him with "a qualified bone specialist" and choosing "a less efficacious and harmful way to treat [his] protruding, displaced bone by manually snapping it into place without consent."

As previously stated, to establish an Eighth Amendment violation, Wilson must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. Deliberate indifference is more than an "inadvertent failure to provide adequate medical care." Id. at 105. Instead, it requires "obduracy and wantonness . . .[,] which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." Rouse, 182 F.3d at 197 (citations omitted). Negligence and malpractice do not constitute Eighth Amendment violations. See Estelle, 429 U.S. at 105-06. Moreover, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette County, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (internal quotations and citation omitted); see also Spruill, 372 F.3d at 235.

Here, the medical records and Wilson's own allegations reveal that he received appropriate and adequate medical care for his broken arm, and that the treatment was successful. For example, on September 22, 2014, Dr. Park examined Wilson, noting that

A.2d 1145, 1149 (Pa. Commw. Ct. 1992).

his right wrist and distal part of his arm was swollen and tender. He ordered an x-ray and prescribed Tylenol and Motrin. Two days later, Dr. Jin, a board-certified general surgeon, examined Wilson and noted that he had a non-displaced fracture of his right ulna. He reviewed the x-ray, set Wilson's bone in place, applied a long arm cast, and took a second x-ray to ensure that the bone was in a good position. He ordered another x-ray for four weeks' time. On October 29, 2014, Dr. Jin removed Wilson's long arm cast, noting that Wilson had good elbow extension and flexion, with some limitation. An x-ray showed that Wilson's arm was progressively healing. Dr. Jin subsequently applied a shorter cast for the next few weeks. Wilson was regularly observed by medical staff and prescribed pain medication. After the second cast came off, Dr. Jin ordered physical therapy and, between November 2014 and February 2015, Wilson demonstrated regular and significant improvement in his range of motion and arm strength.

As the District Court aptly concluded, neither Wilson's disagreement with this treatment nor its alleged inadequacy raises an inference of deliberate indifference. See, e.g., Estelle, 429 U.S. at 107 (explaining that "[a] medical decision not to order [a diagnostic test] does not represent cruel and unusual punishment" because, at most, it - constitutes malpractice). Wilson has not alleged sufficient facts showing that defendants intentionally refused to provide needed treatment, delayed necessary treatment for a non-medical reason, prevented Wilson from receiving needed or recommended treatment, or persisted in a particular course of treatment "in the face of resultant pain and risk of permanent injury." Rouse, 182 F.3d at 197 (quoting White v. Napoleon, 897 F.2d 103,

109-11 (3d Cir. 1990)). Accordingly, the District Court properly granted summary judgment on this claim.

Wilson also alleges that Dr. Jin violated his right to equal protection by denying him access to an orthopedic specialist because of his RHU status. Specifically, he claims that Dr. Jin told him that he would reconsider an orthopedic consult for Wilson when he was returned to general population. We agree with the District Court that Wilson's equal protection claim fails. Because Wilson's claim does not warrant strict scrutiny,[4] he "must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008). Wilson cannot meet this standard because RHU inmates are not similarly situated to general population inmates. See Fogle v. Pierson, 435 F.3d 1252, 1260-61 (10th Cir. 2006) (finding administrative segregation inmates not similarly situated to general population inmates). Moreover, the difference in treatment is likely "reasonably related to legitimate penological interests," see Turner v. Safely, 482 U.S. 78, 89 (1987), because of the security risk RHU inmates may pose when being sent to outside specialists in non-emergency situations. As a result, the District Court properly granted summary judgment on this claim.

---

[4] Wilson does not allege that he is a member of a protected class, and prisoners are not a protected class of individuals. Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001).

Wilson brings a state law claim of medical assault and battery against Dr. Jin, claiming that he "callously snapped [Wilson's] protruding bone back into place without being qualified, and without [Wilson's] consent," resulting in "tremendous pain and residual injury."[5]  Under Pennsylvania law, absent an emergency, claims alleging a lack of consent for surgical or operative procedures constitute a battery on the patient by the physician, who is liable for any resulting injuries.  Cooper ex rel. Cooper v. Lankenau Hosp., 51 A.3d 183, 191 (Pa. 2012).  However, doctors need not obtain a patient's informed consent prior to non-surgical procedures.  Morgan v. MacPhail, 704 A.2d 617, 619 (Pa. 1997).  Surgical procedures are those involving excision, incision, or the use of surgical instruments.  Id. at 619.  We agree with the District Court that the procedure at issue in this case, a closed reduction of a fracture, does not fall within this definition of surgical procedures.  Nor does it fall within the list of procedures provided for in the Pennsylvania Medical Informed Consent Law, 40 Pa. Stat. § 1303.504.  Because the closed reduction of Wilson's fracture is not the type of procedure which can give rise to a claim of medical battery, summary judgment was proper.

Finally, Wilson brings a state law claim of intentional infliction of emotional distress against both Dr. Park and Dr. Jin for their conduct in treating his broken arm. Under Pennsylvania law, a plaintiff must "demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress" in order to state a

---

[5] The District Court rejected Wilson's claim that Dr. Jin, who is a board-certified general surgeon, was not qualified to reduce his fracture.

claim for intentional infliction of emotional distress. <u>Reeves v. Middletown Athletic Ass'n</u>, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004). This has been defined as conduct "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." <u>Id.</u> at 1122 n.5 (quoting <u>Hoy v. Angelone</u>, 720 A.2d 745, 754 (Pa. 1998)). In addition to alleging outrageous conduct, the plaintiff must also suffer physical harm. <u>Id.</u> at 1122-1123.

We agree with the District Court that the medical defendants' actions were not beyond all possible bounds of decency so as to be regarded as atrocious. Wilson was given extensive medical care over a period of several months. While he may disagree with the treatment he was provided, this does not render the medical defendants' conduct outrageous or extreme. No rational trier of fact could conclude, based on the undisputed facts here, that the medical defendants are liable for the Pennsylvania tort of intentional infliction of emotional distress, and summary judgment was therefore appropriate on this claim.

## IV.

For the foregoing reasons, we conclude that there is no substantial question presented by this appeal, and will thus summarily affirm the District Court's order granting summary judgment to the defendants.